## MINNEAPOLIS, ST. P. & S. S. M. RY. CO. v. VAN DUSEN HARRING-TON CO.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1921.)

No. 5446.

**1. Carriers ⬤�longdash100(1)—Shipper held to have acquiesced in notice under demurrage rule given before actual arrival, so as to be liable.**

Where the railroads, the state commission, and a chamber of commerce representing the shippers, to avoid congestion at a terminal, agreed that cars of wheat should be inspected at outside stations before arriving at the terminal, and manifests forwarded to the shipper, which were to take the place of the written notice of arrival required by the demurrage rule on file by the carrier, a shipper, which had acquiesced in such practice by receiving manifests so furnished, and had on previous occasions paid demurrage, is liable for such demurrage on subsequent shipments, before he gave notice of refusal to abide by the practice, though he claimed that the demurrage previously paid was on cars of whose actual arrival he had personally learned.

**2. Carriers ⬤⟻longdash100(1)—Practice under demurrage rule equivalent to agreement between the carriers and shippers.**

Under the demurrage rule established by carriers, which recognizes the validity of agreements in lieu of the written notice required by the rule, a general practice existing at a terminal, for the mutual benefit of consignees and carriers, and generally acquiesced in by the former, is equivalent to an agreement.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the Minneapolis, St. Paul & Sault St. Marie Railway Company against the Van Dusen Harrington Company to enforce payment of the demurrage charge. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Alfred H. Bright, of Minneapolis, Minn., for plaintiff in error.

Albert C. Remele, of Minneapolis, Minn., for defendant in error.

Before HOOK and STONE, Circuit Judges, and LEWIS, District Judge.

HOOK, Circuit Judge. This was an action by the Railway Company to enforce payment of a demurrage charge on a car of wheat destined to Minneapolis, Minn. The shipment originated outside the state. A demurrage rule in plaintiff's tariffs provided for a written notice by the carrier to the consignee of the arrival of cars at destination, or as otherwise agreed between them. Originally it was the practice in shipments to Minneapolis to observe the rule literally by giving the notice after the arrival of the cars in that city, but about 1905 or 1906 a serious congestion of cars at the Minneapolis terminal brought about a change, and, with the concurrence of the State Railroad and Warehouse Commission, the Minneapolis Chamber of Commerce, representing the shippers, and the Northern Railroads —that is, the Great Northern, the Northern Pacific, and the plaintiff here,—the practice was established of stopping the cars of wheat

⬤⟻longdashFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·destined to Minneapolis at certain outlying stations on those railroads, respectively, for the purpose of inspection and sampling by state officials and agents of the consignees. Accordingly samples taken were sent to Minneapolis by passenger trains in advance ·of the cars of wheat. At the same time the railroad companies sent in duplicate manifests of each shipment, one copy of. which was delivered to the consignee and a receipt taken. The samples and the manifests became the basis for sales and orders for disposition of the cars. The cars ·of wheat would follow the samples and manifests, and would almost always arrive in Minneapolis later the same morning. For many years the delivery of these manifests issued at the outlying stations was intended and accepted as compliance with the demurrage rule and in lieu of written notice of the arrival of the cars at destination. In the case of the plaintiff and the defendant, this practice generally continued to July 7, 1917, when defendant notified the plaintiff in writing that it would no longer observe it.

[1] The demurrage sued for in this case arose prior to the written notice given by defendant. It claims that it never acquiesced in the practice, and while the record does show objections at times that notice of arrival at Minneapolis was not given, we do not think it absolved itself from being bound before the distinct repudiation of July 7, 1917. Defendant's traffic manager, who testified at the trial, admitted that before that time it had received thousands of cars of grain in Minneapolis from the plaintiff, the only notice of arrival of which was the manifests issued at plaintiff's outlying station and delivered to it in Minneapolis. He also admitted that demurrage charges had been paid in such cases, but claimed that they were in instances in which his company had ascertained that the cars had actually arrived. We think this contention is more specious than sound. Defendant's knowledge, otherwise gained, of the actual arrival of the cars at Minneapolis, was itself no more a written notice under the demurrage rule than the service of the manifests, and yet·it is put forward as an excuse for the payment of demurrage.

It is not contended that plaintiff knew that defendant's course in paying demurrage charges was for the reason assigned. The only notice given by the plaintiff consisted of the manifests forwarded from the outlying stations, and defendant continued· to accept and receipt for them, and to act upon the information they gave. The purpose of issuing the manifests at the outlying station and of serving them at Minneapolis was twofold: It facilitated the prompt disposition of the shipments, which was of advantage to the defendant and other consignees; and it facilitated the prompt release of the cars for other service, which was of advantage to the plaintiff and to the public it was serving. This latter was also the sole purpose of the demurrage rule which provided for written notice of arrival of the cars at destination, or as otherwise agreed. It is quite apparent that the defendant, while willing to avail itself of benefits, was seeking a technical attitude, that might enable it to avoid that which

was advantageous to the plaintiff, without openly repudiating the practice. Prior to the letter of July 7, 1917, the plaintiff could not lawfully have made defendant an exception to the practice as long as it was willing to receive and receipt for the manifests, and a corresponding disability rested on the defendant.

[2] The demurrage rule recognizes the validity of agreements in lieu of written notice. The Interstate Commerce Commission said that the practice existing at Minneapolis as it had for many years "for the mutual benefit of consignees and carriers, and generally acquiesced in by the former, is tantamount to an agreement." Minneapolis T. Ass'n v. C. B. & Q. R. R. Co., 49 Interst. Com. Com'n. R. 308, 315. A similar practice was upheld in Berwind-White Co. v. Railroad, 235 U. S. 371, 35 Sup. Ct. 131, 59 L. Ed. 275. It was held that, although cars billed for reconsignment may not have actually reached the point named as destination, demurrage may attach for the time held after reaching the point convenient to the belt line for transfer, where, under usual practice for many years, cars so billed were held for reconsignment. The court said that the contention that the cars had not reached destination as provided in the demurrage rules was frivolous.

The judgment is reversed, and the cause is remanded for a new trial.