**VAN DUSEN HARRINGTON CO. v. NORTHERN PAC. RY. CO.***

Circuit Court of Appeals, Eighth Circuit.
April 16, 1929.

No. 8217.

*Rehearing denied July 6, 1929.

A. C. Remele, of Minneapolis, Minn., for appellant.

D. R. Frost, of St. Paul, Minn. (D. F. Lyons, of St. Paul, Minn., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellee, plaintiff below, brought suit in the District Court for the District of Minnesota against appellant, defendant below, to recover charges alleged to be due for reconsignment of carloads of grain from Minneapolis, Minn., under a tariff of rules and charges filed by appellee, governing the diversion or reconsignment of carload freight. The parts of that tariff pertinent to this inquiry are the following:

"Rule 1. Grain, Seeds (field or grass), Hay or Straw, carloads, will be placed on hold tracks of this carrier (or of the carriers parties hereto), and notice of the location of the hold tracks on which the cars are placed sent to the consignee, or posted on the bulletin board where such practice is in vogue, for the purpose of inspection (See Note 1), and held on such tracks or other tracks for disposition orders, at either the billed destination or a point directly intermediate thereto. Upon cars so placed and held the following charges will apply:

"(a) Grain and Seeds—When disposition order is received prior to the expiration of the free time provided for in the National Code of Demurrage Rules as published in I. C. C. No. 1340, issued by B. T. Jones, Agent, supplements thereto and reissues thereof, no charge.

"When disposition order is given after the expiration of the free time here prescribed....................$2.25 per car.

"Rule 2. Cars billed direct to public team tracks, or to elevators, mills or other industries, within the switching limits of the billed destination, and there inspected and delivery taken, will not be subject to the charge provided in Rule 1.

"Rule 3. The disposition order received after the inspection will be considered as being in lieu of the consignment instructions under which the cars arrived at inspection point."

The demurrage tariff published in I. C. C. No. 1340, to which reference was made in this reconsignment tariff, contained the following rules, providing the limits of "free time" for the purpose of fixing demurrage charges:

"On all grain subject to Federal or State Grain Inspection received on or before 8:30 a. m., and upon which notice of arrival is given by 9:00 a. m., disposition shall be given not later than 4:00 p. m. the same day, provided inspection is reported to the office of the Federal or State Grain Inspector before 11:00 a. m. When a reinspection is called before disposition is given, one day additional free time will be allowed, provided Local Freight Agent is notified of the call on day of inspection and a change in grade is allowed by the Federal or State Inspector. If no change in grade is allowed demurrage will be assessed, provided disposition is not furnished before 5.00 p. m. of the day car is first inspected. On all cars loaded with grain and inspected (if for inspection) prior to 6:00 p. m., disposition must be given not later than 4:00 p. m., the following day, excepting that where reinspection or appeal is called, and the grade is changed by Federal or State Inspector or Appeal Board, one additional day of free time shall be allowed.

"Notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent in writing or, in lieu thereof, as otherwise agreed to in writing by this railroad and consignee, within twenty-four hours after arrival of car and billing at destination, such notice to contain car initials and number, point of shipment, contents, and if transferred in transit, the initial and number of original car. When address of consignee does not appear on billing, and is not known, the notice of arrival must be deposited in United States mail enclosed in a stamped envelope bearing return address, same to be preserved on file if returned."

It was stipulated by the parties that Exhibit Z attached was the original carbon copy of the manifest notice given on one of the cars, and was typical and representative of the manifest notices given covering the oth-

er cars involved. Exhibit Z is in words and figures following:

Northern Pacific Railway Company
Staples Station, 7/5 1923.
To Van Dusen Harrington Co., Mpls.

Take Notice.—The following cars have reached this station and are now ready for inspection and delivery, subject to the conditions printed on the reverse side of this sheet:

| Car Initials and Number. | From | Consignor. | Consignee. | Kind of Grain. |
|---|---|---|---|---|
| * * * * * * * * * * * * 44662 | Columbus | Col. Fars. Elev. Co. | Order Fars. Elev. Co. Ntf. Van Dusen H. | Wheat |

It is further stipulated, and conceded in brief; that all the cars were consigned to appellant at Minneapolis; prior to the giving of disposition orders, that such disposition orders were not given within the free time provided for in the demurrage tariff, and that delivery of all of said cars was taken in the Minneapolis switching limits.

For some years the Northern Pacific Railroad Company has had the practice of setting out cars of grain, destined to Minneapolis and Duluth, for sampling purposes at an intermediate division point, to wit, Staples. After the samples are drawn they are forwarded by passenger train to the destination market, where they are graded. The chief advantage of this practice lies in the fact that the sample is graded before the arrival of the grain, making it unnecessary to hold the grain for that purpose for a longer period in congested terminal yards. It also appears that by having and grading the official sample before the arrival of the grain in bulk, the consignee is in a position to expedite the sale and the disposition of the cars. As was stated in argument, one of the main objects is to clear the terminal yards of congestion. This practice originated in 1917 and 1918 as an incident to the World War. Undoubtedly an advantage accrues from it to the public at large, to the owner, shipper, and buyer of grain, and to the carrier as well.

By written stipulation the case was tried to the court sitting as a jury. There was no substantial conflict in the evidence. The court refused declarations of law requested by appellant and gave those tendered by appellee as follows:

"1. The Court finds as a matter of law that upon all the evidence plaintiff is entitled to judgment and that there is no substantial evidence to sustain a finding for defendant.

"2. Defendant having failed to give disposition orders upon the cars enumerated in Exhibit Y within the free time provided for under the applicable demurrage tariff, defendant became liable to plaintiff for the charge of $2.25 per car stated and provided for in Rule 1 of the Rules copied in Finding of Fact V."

The finding accordingly was for appellee.

The contentions of appellant are:

1. That no reconsigning charge as defined in the applicable tariffs of the carrier became due with respect to any of the shipments, for the reason that appellee failed to give notice of the location of the hold tracks on which the cars were placed for purposes of inspection, as required by Rule 1 of the diversion and reconsigning tariff.

2. That no reconsigning charge, as claimed, became due on any of the shipments involved in this case for the further reason that disposition orders were received after the inspection, and therefore, under Rule 3, such disposition orders must be considered by the carrier as in lieu of the consignment instructions under which the car arrived at the inspection point; that thereby the cars were placed in the class described in Rule 2; the effect of such billing being that the cars in suit became cars billed direct to elevators, mills, or other industries within the switching limits of the billed destination, Minneapolis, and therefore not subject under Rule 2 to the charge provided in Rule 1.

Under the facts stipulated and found exception to, the refusal of appellant's requested declarations of law preserved these points for review.

The second may readily be disposed of. The applicable tariff provides that when the disposition order is received prior to the expiration of the free time, there shall be no reconsignment charge; if given after the expiration of the free time, the charge shall be $2.25 per car. Rules 2 and 3 of the tariff must be read in the light of these provisions. It was stipulated, and is conceded, that disposition orders were not given within the free time provided in the tariffs. In construing a railroad tariff, as in the case of other documents, the entire instrument must be visualized, and effect must be given to every word, clause, and sentence, to the end that general and specific provisions in apparent contradiction may subsist together. Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A. 8), 25 F.(2d) 69. It follows, therefore,

that appellant cannot predicate recovery upon Rules 2 and 3 of the reconsignment tariff.
[3] We come now to a consideration of point 1, that no reconsigning charge became due because of appellee's failure to give notice of the location of the hold tracks on which the cars were placed for purposes of inspection as required by Rule 1 above quoted. This tariff, with its accompanying rules, was filed as a result of the findings of the Interstate Commerce Commission in Reconsignment Case No. 3, decided June 24, 1919 (53 I. C. C. 455). At that hearing one of the emphatic complaints made was that cars of grain held for inspection were not set on special hold tracks. The following language appears in the opinion in that case:

"It also appears that the cars are not always left on the track to which they are first switched, but are moved around from place to place. The result of these conditions is that the samplers find it difficult to locate the cars, thus delaying the inspection and final disposition orders. To avoid hunting for the cars they frequently draw the samples from the cars before the incoming train is broken up. Furthermore, the manifests, bulletins, or arrival notices of most of the lines do not show the track locations of the cars and when they do purport to give this information it often develops that before the samplers can reach the cars they have been moved to tracks in another part of the yard."

It is urged by appellee that it is stated in the opinion that the language just quoted does not apply in the case of Minneapolis and Duluth, but it is found, upon examination, that that expression in the opinion refers to the practice of the railroads in setting out cars of grain destined to Minneapolis or Duluth at intermediate division points for sampling, and not to the complaint made with respect to the establishment of definite hold tracks. The Commission reached the conclusion that the only way to make the inspection service definite, certain, and equal in value to all shippers, is to require that the cars be placed on hold tracks designated for the purpose, and that notice of the location of these tracks be given to the consignees. In such case, it was held that a reasonable reconsignment charge in addition to demurrage was proper. It was therefore suggested that where the report of the arrival and location of cars upon hold tracks is sent to the consignee, or published by 9 o'clock of the day, and inspection is reported by 11 o'clock, free time, within which a disposition of the car must be ordered, should extend to 4 o'clock of the same day; that if such order be made

within that time there should be no reconsignment charge; if made after that time, the charge of $2.25 is reasonable, and may be made no matter how long cars remain on the track; that incidental delay is taken care of by demurrage—an entirely different charge, under an entirely different provision of the tariff. In conclusion the Commission suggested as reasonable and just the following provisions to be put in force by the carriers:

"Rule 1. Grain, seeds (field or grass), hay or straw, carloads, will be placed on designated hold tracks of this carrier (or of the carrier parties thereto), and notice of the location of the hold tracks on which the cars are placed sent to the consignee, or posted on the bulletin board where such practice is in vogue, for the purpose of National, State, Board of Trade, or other inspection, and held on such tracks or other tracks for disposition orders, at either the billed destination or a point directly intermediate thereto. Upon cars so placed and held the following charges will apply:

"(a) Grain and seeds.—When disposition order is received prior to 6 p. m. of the day on which inspection is officially reported, including the assignment of grade, by 11 a. m., no charge. When disposition order is given after the expiration of the free time here prescribed, $2 per car.

"(b) Hay and straw.—$2 per car.

"Rule 2. Cars billed to public team tracks, or to elevators, mills, or other industries, within the switching limits of the billed destination, and there inspected and delivery taken, will not be subject to the charge provided in Rule 1.

"Rule 3. The disposition order received after the inspection will be considered as being in lieu of the consignment instructions under which the cars arrived at inspection point."

Pursuant to this suggestion of the Commission, appellee incorporated in its diversion and reconsignment tariff, hereinabove quoted, substantially these same provisions.

It is conceded that what was actually done in the instant case, and in like cases, was to stop the cars at Staples, more than 100 miles from Minneapolis, where samples were taken. From that point the manifest notice, Exhibit Z, hereinabove set out, was sent to the consignee. Thereafter, the samples were forwarded by a passenger train, and later the cars of grain would come in and be placed upon hold tracks in the yards at North Minneapolis. At the yard office a yard check was made daily showing the location of cars

on such hold tracks. It is evident that in filing its diversion and reconsigning tariff appellee acted upon the suggestion of the Commission. That tariff purported to provide literally that which the Commission thought to be an essential basis for a charge of this nature. It is apparent, however, that the provisions of the tariff, thus embodying the suggestions of the Interstate Commerce Commission, were not observed in practice. No notice of location of the hold tracks on which the cars were placed was sent to the consignee, or posted on any bulletin board. In the petition, in the stipulations filed, and in the testimony of the assistant general freight agent of appellee, it is stated that the hold tracks in question were located within the switching limits of Minneapolis. At the argument, counsel for appellee contended that the tracks at Staples—which are called "sampling tracks," where samples were taken, are hold tracks within the meaning of the tariff. Even so, no information as to the location of such tracks was given other than the fact that the cars in question had reached the station at Staples; and those tracks could not discharge the functions required of hold tracks, which are supposed to be located conveniently for the taking of new samples if desired. It is insisted by appellant that the strict observance of this rule is important for protection of consignee in case additional samples are required in order that the same may be examined and a disposition of the cars made within the free time. It is probably true that upon inquiry at the yard office the consignees could ascertain the location of the hold tracks in North Minneapolis with greater or less delay, but it cannot be denied that the terms of the tariff, which would appear to be conditions precedent to the right to impose these reconsignment charges, were not observed. Such tariffs are construed strictly. The carrier was not compelled to publish its tariff in these precise terms; having done so, it must abide by them.

It is urged by counsel for appellee that by section A of its demurrage tariff it is provided that "notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent in writing or, in lieu thereof, as otherwise agreed to in writing by this railroad and consignee," and that appellant in correspondence had agreed that the manifest notice from Staples would be sufficient. An examination of this correspondence discloses that appellant's agreement, to which reference is made, extended only to accepting notice of arrival at Staples

as sufficient for demurrage purposes without the necessity of a second notice of arrival at Minneapolis. This court, in Minneapolis, St. Paul, etc., Ry. Co. v. Van Dusen Harrington Co., 272 F. 255, held:

"Under the demurrage rule established by carriers, which recognizes the validity of agreements in lieu of the written notice required by the rule, a general practice existing at a terminal, for the mutual benefit of consignees and carriers, and generally acquiesced in by the former, is equivalent to an agreement."

This decision, however, had to do with the charges provided for in the National Code of demurrage rules, and has no application to the reconsignment charge provided in the diversion and reconsigning tariff which permits no departure from its terms by any agreement or practice.

The provisions of the reconsignment tariff filed by appellee accord with the directions of the Interstate Commerce Commission and with the reasons which underlie those directions. The practice of definite notice as to the location of hold tracks at destination is essential to correct the evils found to exist, in that samplers found it difficult to locate cars, thus delaying inspection orders. Having filed a tariff in accordance with the suggestions of the Commission, it was incumbent upon appellee to comply with its terms. This it has not done. For this reason, the judgment below is reversed and the cause remanded for further proceedings in accordance with this opinion.

It is so ordered.