## UPDIKE GRAIN CO. v. CHICAGO & N. W. RY. CO. (two cases).

Circuit Court of Appeals, Eighth Circuit.
October 7, 1929.

Nos. 8381, 8382.

Anan Raymond, of Omaha, Neb. (Francis A. Brogan and Alfred G. Ellick, both of Omaha, Neb., on the brief), for appellant.

Robert D. Neely, of Omaha, Neb. (Wymer Dressler, of Omaha, Neb., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

KENYON, Circuit Judge. These two cases were consolidated and tried by the court under a written stipulation waiving a jury. They are suits to recover freight charges claimed to be due upon shipments of grain by appellant from various stations on the Chicago & Northwestern Railway between Sioux City and Council Bluffs, through Council Bluffs to Chicago, with transit privileges at Council Bluffs. The carrier collected the regular through rate from points of shipment to destination. Subsequently becoming convinced that it had not collected the proper freight charges according to its transit tariff, it brought these suits, claiming that it should have collected the through rate from Sioux City to Chicago of 26½ cents per 100 pounds. If the carrier's construction of the tariff is correct, then appellant is liable for the amounts sued for.

The trial court held with appellee, and entered judgments against appellant totaling $2,573.91 and costs of suits. The short question here is the construction of the so-called transit tariff (appellee's Exhibit No. 2). We

set out certain parts thereof. Rules 4 and 20 are as follows:

| Rule No. | Subject | Rules |
|---|---|---|
| 4 | Rates To and From the Transit Station | (A) Rate into the transit station will be the current tariff rate, point of origin to such station.<br><br>(B) Rate from the transit station to transit destination will be the difference between the rate collected to the transit station and the transit rate, point of origin to transit destination, in effect on date of shipment from point of origin, as shown on freight receipt bill surrendered.<br>Unless otherwise provided, the transit rate will be the tariff rate on the original commodity, point of origin to destination. |
| 20 | Intermediate Stations | The transit rates and privileges to or from intermediate stations will be the same as provided under the transit rules to or from the next more distant station to which or from which transit rates and privileges are named in tariffs. (See Exception.)<br>Exception.—Will not apply on shipments moving wholly within the States of Minnesota or Iowa. |

Item 52 is as follows:

C. & N. W. R'y   Stations in Iowa.

| Item No. | When originating at | Will be Granted Transit Privileges at C. & N. W. R'Y Stations as follows: | Will be Forwarded from Transit Stations C. & N. W. R'y Stations as follows: | Rate to be Charged (see Rule 4) When no Specific Rate is shown below Direct Tariff Rate per Rule 4 applies. |
|---|---|---|---|---|
| 52 | Sioux City, Iowa | Omaha, Neb. South Omaha, Neb. Council Bluffs, Iowa. Missouri Valley, Iowa. | Chicago, Ill. Peoria, Ill. Milwaukee, Wis. and points taking same rates. | |

■ Ambiguous tariffs are, of course, to be construed favorably to shippers. Southern Pac. Co. v. Lothrop (C. C. A.) 15 F.(2d) 486. If the tariffs are not ambiguous, the question of what the rate is must be resolved by reference to the tariffs.

The trial court held there was no ambiguity in this transit tariff, and no necessity for the consideration of any extraneous evidence of experts. Each party to this controversy contends that the tariffs are clear, that its construction of the tariff is the only right one, and that there is no doubtful question involved. One expert for each party in his testimony, following the customary practice of experts, construed the tariff as clearly supporting the position of the side for which he was testifying.

Aided by well-established principles, we think the real meaning of this transit tariff can be ascertained from its terms. In Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A.) 25 F.(2d) 66, 68, 69, Judge Booth, speaking for the court, has clearly stated the rules applicable to the construction of railroad tariffs. Some of them we quote:

■ "The tariff, so long as it is of force, is, in respect of rates named, to be treated as though it were a statute, binding as such upon railroad and shipper alike. * * *

■ "While there may be some rules of construction peculiarly applicable to a railroad tariff, yet ordinarily the rules governing the construction of other documents have been applied by the courts to such tariffs. * * *

■ "Another cardinal rule in the construction of statutes is that effect is to be given, if possible, to every word, clause, and sentence. * * *

"And the corollary that in determining the meaning of part of a document resort may be had to other parts in order that the whole may stand, is recognized in the construction of railroad tariffs."

From the index to the transit tariff it is apparent that shipments of grain from Modale, Mondamin, Blencoe, and other stations named, from which the shipments under discussion were made, were within the general range of transit privileges. None of the items of the tariff, however, provide specifically for transit privileges at Council Bluffs on grain shipped from the various stations, except Item No. 52, which provides for such privileges on shipments originating at Sioux City. It also provides that when no specific rate is shown therein the tariff rate under Rule 4 applied. No rate being shown in Item No. 52 we turn to Rule 4, which is concerned with the rates to and from the transit station. The proper deduction therefrom would be that the rate on grain originating at Sioux City and milled in transit at Council Bluffs would be the current tariff rate on grain from Sioux City to destination. The provision of that rule obviously leading to confusion is the third subdivision that, "unless otherwise provided the transit rate will be the tariff rate on the original commodity,

point of origin to destination." To this we advert later.

Rule 20 is concerned with intermediate stations, and provides that the transit rates and privileges to or from intermediate stations will be the same as provided under the transit rule to or from the next more distant station to which or from which transit rates and privileges are named in tariffs. That station is Sioux City.

It is the contention of appellant that the term "intermediate stations" as used in Rule 20 does not cover the stations between Sioux City and Council Bluffs, and reference is made to Rule 3 of the general commodity tariff introduced in evidence for a definition thereof. However, the term "intermediate stations" has been defined by this court in National Elevator Co. v. Chicago, M. & St. P. Ry. Co., 246 F. 588, 592, as follows: "It is manifest that the word 'intermediate' refers to rates from points intermediate between stations named, or intermediate between the extreme limits of the defendant's road, whether named or not. We have reached the conclusion that it refers to intermediate points between the stations named." This settles the question that these various points of shipments were intermediate stations under the terms of Rule 20.

Sioux City was the only station granted, according to the provisions of the tariff, specific transit privileges at Council Bluffs. The intermediate stations, to secure said rates and privileges, were placed on the Sioux City basis.

Clause 3 of Rule 4 is in our judgment the only ambiguous part of this tariff, and it is productive of some confusion. It states, "Unless otherwise provided, the transit rate will be the tariff rate on the original commodity, point of origin to destination."

Appellant claims that under this provision the shipments here involved are entitled to a transit rate which would be the tariff rate from point of origin to destination, unless some exception applicable to shipments from these points appears elsewhere in the tariff, and that the point of origin is where the shipment originates.

Appellee contends that this clause of Rule 4 is added to the rule for the purpose of making it plain that shipments of grain milled in transit and manufactured into other commodities or products will be transported from such transit point to destination at the rate charged on the original commodity. That is, that the transit rate would be the tariff rate on grain and not a different rate on the grain products created at the milling-in-transit point.

These contentions vary widely. While we think appellee's construction thereof is correct, the real nub of the matter is the construction of the words "point of origin" as used in Rule 4. From every viewpoint construction of this phrase is controlling in the proper determination of this case. Ordinarily the point of origin would be the place from which the shipments were made. Here there are other provisions of the tariff which must be considered in arriving at its meaning as used therein. On this subject the trial court, referring to Rule 4, said in its opinion: "But the use of the words 'point of origin' there, when you have rule 20 in mind, it is to my mind very plain as to its real meaning, that point which is to be regarded under the tariff sheet as the point of origin for tariff making and rate making purposes." We agree with this statement. Giving effect to every "word, clause and sentence of the transit tariff," and reconciling Rules 4 and 20 and Item 52, it seems to us that the only conclusion properly to be drawn is that these shipments of grain from intermediate stations between Sioux City and Council Bluffs were covered by Rule 20, that the transit rates from these stations were the same as those provided under the transit rules from the next more distant station, which was Sioux City, and that the Sioux City tariff rate is the only rate that could be legally applied where milling in transit privileges were accorded at Council Bluffs, as Sioux City is the only "point of origin" named in the transit tariff. Milling in transit privileges, while in the nature of rights, are to be exercised under a proper and legal tariff, and not otherwise.

From some of the correspondence in the record it appears there was confusion in the mind of appellee's freight manager as to the proper construction of this tariff, and since the trial of this case Item 52 has been amended and now covers shipments originating at stations on the Chicago & Northwestern Railway in Iowa, Sioux City to Crescent, inclusive. That there was some injustice in charging the same rate from Crescent, only a short distance from Council Bluffs, as is charged from Sioux City, is apparent; but it was the duty of the railway company to collect the rates provided by its tariff, for railroad tariffs "in respect of rates named" are to be treated as statutes "binding as such upon railroad and shipper alike." Pillsbury Flour Mills Co. v. Great Northern Ry., su-

pra. We believe the trial court was correct in holding that appellee was entitled to collect on these shipments the Sioux City rate of 26½ cents per 100 pounds.

The judgments in both cases are affirmed.