## AMERICAN TRUST CO. v. AMERICAN RAILWAY EXPRESS CO.

### No. 141.

District Court, N. D. Indiana, South Bend Division.

June 27, 1930.

Pickens, Davidson, Gause, Gillion & Pickens, of Indianapolis, Ind., and Jones & Obenchain, of South Bend, Ind., for plaintiff.

Parker, Crabill, Crumpacker & May, of South Bend, Ind., for defendant.

SLICK, District Judge.

This cause was submitted to the court for trial without the intervention of a jury upon a stipulation signed by the parties waiving their right to trial by jury and filed in the cause. A special finding of facts and conclusions of law were requested, and are filed in the cause. By reference to this special finding of facts, the following brief summary is disclosed.

Plaintiff is a banking corporation organized under the laws of the state of Indiana, is a member of the Federal Reserve System in the Chicago district, and its banking house is located in the city of South Bend, Ind. Defendant express company is a corporation organized under the laws of the state of Delaware, is licensed to do business in Indiana, and was at the time alleged in the complaint, and for a long time prior thereto, engaged as a common carrier by express and transporting commodities for hire throughout the United States, and between the city of South Bend, Ind., and the city of Chicago, Ill.

On September 11, 1928, one of defendant's drivers called at plaintiff's banking house, received and took possession and custody of a shipment of money in the sum of $9,018 to transport it for hire to the Federal Reserve Bank in Chicago. The money was placed in a strong box furnished by defendant and deposited in its truck, and defendant's driver, who was armed, placed said money in said strong box, locked the box, and retained the key. While transporting said money between plaintiff's bank and defendant's office, unknown robbers held up the driver, took all of the money, and absconded. The money was never delivered to the Federal Reserve Bank in Chicago. One of plaintiff's employees rode with the driver, intending to go to defendant's office, receive a receipt for the money when it was deposited in defendant's office, and return the receipt to the plaintiff.

The operation on September 11, 1928, was in all respects in conformity with a custom and practice of defendant extending over a period of at least five years, and was a service extended to the public generally in South Bend by defendant covering that period of time. Prior to the 11th day of September, 1928, and while the aforesaid custom and practice of collecting and transporting money shipments existed, defendant filed with the Interstate Commerce Commission an official express classification, known as American Railway Express Company official classification. This classification was in full force and effect prior to and including September 11, 1928, and provided as follows:

"Packages containing money, bonds or other securities will be received for transportation only when delivered at the Express Company's office by shippers. Shipments of coin or bullion too heavy to be carried by hand may be called for by wagon, but a representative of the shipper must accompany and retain custody of the shipment until delivered at the express company's office."

This provision, that defendant would receive money shipments only when delivered at its office and custody retained by the shipper until delivered at its office, was not observed in practice in South Bend, Ind., up to and including the 11th day of September, 1928, but, on the contrary, defendant's custom and practice was to take custody of such money shipments at the shipper's place of business, as was done in the instant case. The money lost was the property of the plaintiff.

274

On this state of facts defendant earnestly contends that plaintiff is bound by said official express classification, and that any agreement on the part of defendant to accept shipments of money at any other place than as designated in such classification is illegal, not enforceable, and consequently no enforceable obligation can be predicated thereon; that defendant could not accept shipments at any other place than that designated in the classification, and any agreement on its part to accept shipments at other places was illegal and void. Defendant cites a large number of cases which hold that contracts made in violation of a carrier's tariffs are void and not enforceable, but no case is cited by defendant to the effect that no liability can be predicated on a contract to carry because the contract is in violation of the Interstate Commerce Act.

Defendant was liable at common law as a common carrier of the interstate shipment as an insurer. This liability at common law is not changed by the Interstate Commerce Act and its amendments.

In Merchants' Cotton-Press & Storage Co. v. Insurance Company of North America, 151 U. S. 368, at page 388, 14 S. Ct. 367, 374, 38 L. Ed. 195, the Supreme Court of the United States, speaking of an agreement for a rebate, used the following pertinent language:

"We are of opinion * * * that if it [the agreement for rebate] would not prevent liability on the part of the carrier for the freight received * * *. The law makes such agreements as to rebate, etc., void, but does not make the contract of affreightment otherwise void; and we think there is nothing in the law, or the policy of it, which requires a construction that would excuse a carrier from all liability, when it made such a contract in connection with that for receipt and transportation of freight. Such a construction would encourage, rather than discourage, such unlawful agreements for rebates. * * * Such a contract for rebate would be void, and could not be enforced, but we think the shipper could nevertheless recover for loss of his freight through the carrier's * * * negligence. * * *

"There is nothing in the interstate commerce law which vitiates bills of lading, or which by reason of such allowance [rebates] * * * if actually made, would invalidate the contract of affreightment, or exempt the railroad company from liability on its bills of lading."

And in Adams Express Co. v. Darden, 286 F. 61, at page 65, the Circuit Court of Appeals of the Sixth Circuit used the following language:

"It remains to consider whether the mere giving and receiving of rebate from the applicable tariff rate rendered the contract of shipment here in question void and unenforceable. Defendant's argument in that respect is briefly that such giving or acceptance of rebates was, by the act in force when the shipment was had, made unlawful, and subjected both the carrier and the shipper to penalty therefor, and that the case is therefore governed by the general rule that an illegal contract will not be enforced by the courts.

"Whether or not the contract of shipment is nonenforceable depends upon the public policy of the United States in that respect, as evidenced by its statutes and the decisions of its courts. While the statute makes all rebating, and contracts therefor, unlawful and unenforceable, it is to be noted that, notwithstanding the fact that rebating has been forbidden for the past 35 years, and notwithstanding the numerous amendments of the original act, the statute has never declared the contract of carriage unenforceable by reason of rebating, or the carrier thereby absolved from liability for negligent failure to deliver. The statute in force when the shipment in question was made provided drastic remedies and penalties for rebating. Not only were both carrier and shipper made liable to criminal punishment, but the shipper was made liable to the United States for three times the amount of the rebate received or accepted. More than this, a carrier, at least when not in default, is entitled to recover from the shipper any deficiency of rates paid below the legal tariff rates. Congress presumably believed that public policy, evidenced by the statutes enacted, as has frequently been declared, in the interest of the shipping public, would be best subserved by holding the carrier liable for the value of the shipment lost or destroyed through its negligence, notwithstanding a violation of the provisions against rebating, for which specific penalties and remedies were otherwise provided.

"It is now well settled that, when a statute imposes specific penalties for its violation, where the act is not malum in se, and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the legislative intent to render such contracts

illegal and unenforceable. * * * This rule is not in conflict with, but is an exception to, the general rule that an action cannot be maintained upon an illegal contract."

[redacted] Tariffs and classifications are to be construed favorably to shippers. 35 F.(2d) 487, and in a practical way, 241 U. S. 190, 36 S. Ct. 541, 545, 60 L. Ed. 948. In the last case, which is entitled Georgia, Florida & Alabama Railway Co. v. Blish Milling Co., Mr. Justice Hughes, now Chief Justice Hughes, speaking of a provision in a bill of lading for written claims and of a telegram which it was held served the same purpose, said: "It [the stipulation in the bill of lading] is addressed to a practical exigency and it is to be construed in a practical way."

Judge v. Northern Pac. Ry. Co. (C. C.) 189 F. 1014, 1015, seems to be a case on all fours with the case at bar. In that case suit was brought against the railway company for the death of an animal accepted and carried in violation of the tariff filed with the Interstate Commerce Commission and in force at the time of the shipment. Defendant urged that it was unlawful under its filed tariff to carry animals except in a special car, and then only upon the execution of a release relieving the carrier from liability. The contract of carriage being in violation of this published tariff, defendant urged that it could not be held liable. In the case at bar defendant in its published express classification said it would receive money for shipment only when the money was delivered at its office, but, in direct violation of this provision in the classification, it did accept the money at a place other than its office. In the case in 189 F. at page 1014, the Northern Pacific Railway Company said in its published tariffs that it would not accept animals to be carried in any other place than in a special car and then only after the shipper executed a release from liability as a common carrier. It did, however, accept an animal and carried it in a baggage car in direct violation of its published tariff and without the shipper executing a release. In this case the court held that, by accepting the animal for transportation, defendant undertook the performance of such carriage and assumed the duties of a carrier, and that defendant could not escape liability for failure to perform its contract of carriage on the ground that the initial contract was illegal, and said:

"A contract of carriage in violation of the interstate commerce law is void and cannot be enforced, and probably the carrier, after having entered upon the performance, may withdraw therefrom without being liable for breach of the contract. * * *

"But when a carrier accepts and takes charge of property for transportation, it becomes the bailee thereof, and the law imposes upon it, in the absence of a binding contract *limiting* its liability, the duties of either a common or private carrier according to the facts, for a violation of which it will be liable, and this regardless of the legal sufficiency of the contract of carriage. The liability in such cases arises out of the possession of the property by the carrier under a contract of affreightment, and the duties and obligations which the law imposes upon it in reference thereto, and not wholly out of the agreement under which the property was delivered to and accepted by it. The Interstate Commerce Commission forbids rebates, special rates, preferences, etc., and makes all agreements in reference thereto void, but it does not make the contract of affreightment otherwise void, and there is nothing in the law which will excuse the carrier from liability when it has accepted property for transportation under such a contract."

[redacted] So that, plaintiff and defendant having entered into a contract which was in accordance with the general practice and custom indulged in by defendant over a term of years, under which contract or agreement defendant accepted possession, custody, and control of plaintiff's money at a place other than as designated in its express classification approved by the Interstate Commerce Commission, defendant cannot be heard to say that, because it violated its own express classification, it shall not be liable for the safe custody of the money intrusted to its care for transportation by the plaintiff. No doubt if defendant had refused to send its wagon and receive the money on the ground that it was under no obligation to receive money at any other point than at its office as provided in its classification, plaintiff would have been without a remedy, for it could not have sued defendant for breach of its agreement to accept the money at a place otherwise than as designated under the classification. The contract, being in violation of the published classification, would be nonenforceable. But defendant did accept the possession, custody, and control of said shipment of money, and, having done so, it is liable as a common carrier, as an insurer.

Judgment will therefore be entered for the plaintiff.