## AMERICAN RY. EXPRESS CO. v. AMERICAN TRUST CO.

### No. 4443.

Circuit Court of Appeals, Seventh Circuit.

Feb. 13, 1931.

Rehearing Denied March 26, 1931.

Albert M. Hartung, of New York City, and Arthur L. May, Samuel Parker, W. G. Crabill, and S. J. Crumpacker, all of South Bend, Ind., for appellant.

Fred C. Gause, Samuel O. Pickens, R. F. Davidson, Arthur L. Gilliom, and Owen Pickens, all of Indianapolis, Ind., and Roland Obenchain and Vitus Jones, both of South Bend, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellee alleged, and appellant denied, liability for a loss of $9,018 (in currency part of which was silver coin) which occurred when the money was being transported from appellee's bank building to appellant's office in South Bend, Ind. A jury trial was waived and the court made special findings of fact and entered judgment, (D. C.) 42 F.(2d) 272, for the full amount together with interest and costs in appellee's favor.

Material facts are few and not in dispute. Appellant's truck driver called at appellee's bank, and the money ($1,000 in silver half dollars and $8,018 in one and two dollar bills) was placed in appellant's iron strong box which was then locked. The truck had a closed body. A representative of appellee rode on the seat beside the driver. As the truck was driven along the streets of South Bend, it was held up and robbed by unknown persons. The money was never recovered.

Liability depends on whether the money had been delivered to appellant. In other words, had appellant's common-carrier liability as an insurer arisen when the robbery occurred?

The court made special findings of fact which fully covered every issue presented by the pleadings and proof. He found, among other things:

"During the course of said five-year period preceding said 11th day of September, 1928, and while the aforesaid custom and practice of collecting and transporting money shipments existed, viz.: On the 27th day of November, 1926, the defendant filed with the Interstate Commerce Commission of the United States an official express classification * * * which * * * was * * * known * * * as American Railway Express Company Official Express Classification No. 30, I. C. O. No. 3280. That said official express classification * * * remained in full force * * * from * * * January, 1927, up to * * * the 11th day of September, 1928, and thereafter. That said official express classification contained the following provision:

" 'Money Classification.

" 'A.  Receiving Shipments.  * * *

" '(5) Packages containing money, bonds, or other securities will be received for transportation only when delivered at the Express Company's office by shippers. Shipments of coin or bullion too heavy to be carried by hand may be called for by wagon, but a representative of the shipper must accompany and retain custody of the shipment until delivered at the express company's office.

" 'Exception—At points where wagon service is maintained, express companies, when special request is made by shippers a sufficient time in advance to permit of the necessary arrangements being made, will call for shipments of silver bullion by wagon and receipt for same on the premises of the shipper.'

"That said Official Express Classification was a tariff duly filed by the defendant with the Interstate Commerce Commission, and duly published and posted as required by law.

"11. The provision in said Money Classification that defendant will receive money shipments for transportation only when delivered at its office by shippers and the provision that the custody of the shipment must be retained by a representative of the shipper until the shipment is delivered at said office in instances when called for by defendant's wagon were not observed in practice at South Bend, Indiana up to and including said 11th day of September, 1928. On the contrary defendant's custom and practice of receiving for transportation, and taking custody of, money shipments at the shippers' place of business as hereinbefore described and found continued unchanged after the effective date of said Official Express Classifi-

cation up to and including the 11th day of September, 1928.

"12. At the time of said robbery the said money was in the custody and control of defendant, and the same had been accepted by defendant, for immediate transportation by express by defendant from plaintiff's said bank at South Bend, Indiana to said Federal Reserve Bank of Chicago, at Chicago, Illinois. Plaintiff's said employee, Bowe, did not retain or have custody of said money on said trip prior to or at the time of said robbery.

"13. At the time of said robbery said money was the property of plaintiff. * * *

"14. In receiving, transporting and handling said money shipment of September 11, 1928, defendant extended to plaintiff no privilege, facility or treatment different from those which it was then, and had for a long time prior thereto been, extending alike to all shippers of money in said city of South Bend, Indiana."

It will be thus seen that the proper disposition of the appeal turns upon the effect of the tariff governing the "Money Classification" filed with the Interstate Commerce Commission as well as the effect of appellant's conduct, long continued, of calling for and transporting the money from the bank to appellant's office.

The holdings which impose or mark the limitations of liability of a carrier to a shipper are too numerous to here require restatement.[1] They all hold that the tariffs filed with and approved by the Interstate Commerce Commission are essential and controlling provisions of the contract between the parties.

But appellee argued that certain tariff provisions may be waived; that among such provisions, which a carrier may waive, is the one which designates the place where ship-

[1] Chesapeake & O. Ry. Co. v. Westinghouse Co., 270 U. S. 260, 46 S. Ct. 220, 70 L. Ed. 576; Davis v. Henderson, 266 U. S. 92, 45 S. Ct. 24, 69 L. Ed. 182; Davis v. Cornwell, 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848; Baltimore & Ohio Southwestern Railroad Co. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 159; Georgia, Florida & Alabama R. R. Co. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; Southern Railway Co. v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836; Chicago, Rock Island & Pacific Railway Co. v. Cramer, 232 U. S. 490, 34 S. Ct. 383, 58 L. Ed. 697; Pennsylvania Railroad Co. v. International Coal Mining Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446; Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Updike Grain Co. v. Chicago & Northwestern Ry. Co. (C. C. A.) 35 F.(2d) 486; Foley v. Chicago Great Western R. R. Co., 205 Iowa, 72, 217 N. W. 563; Thomas Canning Co. v. Southern Pac. Co., 219 Mich. 388, 189 N. W. 210.

ments may be received. Judge v. Northern Pac. Ry. Co. (C. C.) 189 F. 1014, is cited to support this contention.

There are two answers to appellee's argument: (a) The delivery of the money to the truck driver was, under all the facts and circumstances disclosed in this case, not a waiver of the tariff provision respecting receipt of the money by the carrier as such. (b) The tariff provision necessitating the delivery of the money to the carrier's office is one which could not be waived by the agreement of the parties, nor by a custom, which might have constituted a waiver had appellant not been a common carrier.

(a) Examining the "Official Express Classification," above quoted, and which is on file with the Interstate Commerce Commission, it becomes necessary to read the three sentences together. The first one fixes the carrier's status as to money, bonds, or other securities "only when delivered at the Express Company's office." The next sentence is limited to "shipments of coin or bullion too heavy to be carried by hand." The last clause of this second sentence leaves no doubt but that the "coin or bullion" remains in the shipper's possession until "delivered at the express company's office." Until such delivery occurs, the carrier's status and the attending liability as an insurer does not arise. The third sentence applies only to shipments of silver bullion. It has no bearing on the instant case save as it affects the construction of the entire paragraph. Its presence invokes the maxim, "Expressio unius est exclusio alterius," when construing the other two sentences.

■ Applying this tariff to the situation before us, what do we find?

The shipment in question included 2,000 silver half dollars. Its weight was such that the shipper was "of right" entitled to call appellant's "wagon." But appellee's right to have its coin thus carried was conditional. It was to "accompany and retain custody of the shipment until delivered at the express company's office." There was no waiver in fact arising out of such a transaction. The shipper was within its right in acting as it did and the carrier was obligated to carry the coin upon tender and upon the condition that a representative of the bank accompany the driver. Likewise, we see nothing in the fact that in addition to placing silver coin in appellant's iron strong box, appellee placed therein other currency, to wit, bills. It was a wise precaution, but it did not change the status

of appellant. It did not make appellant a carrier with the liability of an insurer.

While the court's finding respecting appellant's custom does not cover shipments of money, bonds, or other securities only, we shall assume that appellant did receive from banks at South Bend such packages which contained no "coin or bullion." The first sentence of the tariff does not say that appellant's truck driver should not allow the bank's representative to ride with him to the express company's office. It expressly defines the time when delivery to the express company occurs and nothing more. The truck had a strong iron box inside, which was locked. Appellee naturally and wisely desired the protection that such transportation afforded. But such desire did not establish a delivery of the money by the express company. The truck driver gave no receipt to the bank. The express company never issued any receipt until the money or securities reached its office. It was then, and not until then, that delivery to appellant as a carrier occurred. It was not until such receipt by the carrier was issued pursuant to the tariff that the liability as an insurer arose.

■ (b) But if the evidence showed that both appellant's agent and the bank understood that the legal possession of the money passed to the carrier at the bank, and if we further assume that a receipt was given therefor by appellant's driver at the bank door, these facts would not, under the decisions, affect appellant's liability. For the published tariff may not be avoided, enlarged, or varied by the shipper and the carrier through express or implied contract. The decisions are clear and explicit. Such tariffs, at least those which are factors in determining the carrier's charges, have the force and effect of statutes. Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446.

As stated in Davis v. Cornwell, 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848:

"The assumption by the carrier of the additional obligation was necessarily a preference. The objection is not only lack of authority in the station agent. The paramount requirement that tariff provisions be strictly adhered to, so that shippers may receive equal treatment, presents an insuperable obstacle to recovery."

The judgment is reversed, and the cause remanded, with direction to dismiss the action.