## NORTHERN PAC. RY. CO. v. VAN DUSEN HARRINGTON CO.

### No. 9336.

Circuit Court of Appeals, Eighth District.
July 29, 1932.

See, also (D. C.) 34 F.(2d) 786.

Frederic D. McCarthy, of St. Paul, Minn. (D. F. Lyons and D. R. Frost, both of St. Paul, Minn., on the brief), for appellant.

A. C. Remele, of Minneapolis, Minn., for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment in favor of defendant in an action at law brought by the Northern Pacific Railway Company against the Van Dusen Harrington Company to recover tariff charges on 103 carload ship-

ments of grain over the line of said railway company from points west of Staples, Minn., destined to Minneapolis, Minn.

On a former appeal, this court reversed a judgment obtained by the railway company, and remanded the cause. 32 F.(2d) 466.

The plaintiff alleged that a $2.25 charge on each car became applicable under rule 1 contained in the Diversion and Reconsigning Tariff, N. P. Ry. No. 770-N, I. C. C. N. P. No. 7641, and supplements thereto. This was denied by the defendant. The charge was one imposed under the rule when disposition order of a car was not given until after the expiration of the "free time."

A jury was duly waived by stipulation, and the case was tried to the court. Evidence was offered as to the handling of 14 cars out of the total number; it being stipulated that if the decision of the case was for plaintiff, the court could allow plaintiff to prove the handling record of the other cars.

Rule 1 referred to was designated: "Rules and Charges Governing Grain, * * * Carloads, Held in Cars on Track for Inspection and Disposition Orders Incident Thereto at Billed Destination or at Point Intermediate Thereto."

The rule, so far as here material, reads as follows:

"Rule 1. Grain, * * * carloads, will be placed on hold tracks of this carrier * * *, and notice of the location of the hold tracks on which the cars are placed sent to the consignee, or posted on the bulletin board where such practice is in vogue, for the purpose of inspection (See Note 1), and held on such tracks or other tracks for disposition orders, at either the bill destination or a point directly intermediate thereto. Upon cars so placed and held the following charges will apply:

"(a) Grain and Seeds—When disposition order is received prior to the expiration of the free time provided for in the National Code of Demurrage Rules as published in I. C. C. No. 1340, issued by B. T. Jones, Agent, supplements thereto and reissues thereof, no charge.

"When disposition order is given after the expiration of the free time here prescribed * * * $2.25 per car. * * *

"Note 1—The inspection as referred to is:

"(a) On Grain and Seeds, that made under National, State or Board of Trade requirements by competent and impartial authority independent of both vendor and vendee."

The main facts are not in dispute. The cars in question (identified in Exhibit Y received in evidence) were consigned to the Van Dusen Harrington Company, Minneapolis. On arriving at Staples, a division point on said line of railway about 130 miles west of Minneapolis, the cars were held and samples were taken by samplers employed by the state of Minnesota and by samplers employed by the Big Six Sampling Bureau, which bureau was employed by a number of firms in Minneapolis, including the Van Dusen Harrington Company. Ample information and facilities were furnished by the railway company for the taking of said samples at Staples; and it has been the uniform practice for samples to be taken at that point for a number of years, including the times of the shipments in question. The samples which were thus taken at Staples by the Sampling Bureau were sent by passenger train to Minneapolis, and were received at that point by the Minneapolis office of the Sampling Bureau before the cars of grain arrived. While the cars were at Staples, a so-called manifest was issued by the railway company and sent to the consignee at Minneapolis. The manifest was in the following form:

"Northern Pacific Railway Company

"Staples Station 7—10—23

"To Van Dusen Hagtn.

"Mpls.

"Take Notice—The following cars have reached this station and are now ready for inspection and delivery, subject to the conditions printed on the reverse side of this sheet.

| Car Initials and No. | From | Consignor | Consignee | Kind of Grain |
|---|---|---|---|---|
| 45042 | Edmunds | John Latman | Van Dusen-Hgtn. | Oats |

(Stamp)
Received
Van-Dusen-Harrington
Co.    7
Jul 11 1923"

After the samples were taken at Staples, the cars were moved to Minneapolis and placed there upon certain tracks, known as grain tracks or hold tracks, in the Northern Pacific Railway yard. There were six of these tracks. The cars were held on these tracks until disposition orders were given by the consignee directing where the cars should be unloaded. Free time of a number of hours was allowed on each car under tariff provisions. Disposition orders as to the cars herein controversy were not given by the Van Dusen Harrington Company until after the free time had expired.

In the railroad yard at Minneapolis was a yard office of the railway company having a telephone located therein. Samplers were accustomed to congregate in the yard office. If the consignee (in this case the Van Dusen Harrington Company) desired a resample of any of the cars, the samplers were notified through the Sampling Bureau and they obtained the location of the car specified from certain yard-check lists made up by employees of the railway company and from a "grab" book made up partly by said employees of the railway company and partly by the samplers themselves. The "grab" book contained the numbers of the cars received each day and the track upon which each car stood. The "grab" book was made up from the yard-check lists which were made by the yard clerk as he went along the tracks to take the car numbers. These yard-check lists showed the order in which the cars stood on each track. From these two sources, the samplers were able to ascertain the location of a particular car and make the resampling.

No notice was posted upon a bulletin board by the railway company of the placing of the cars in controversy on the hold tracks of the railway company at Minneapolis; and no notice was sent out or given by the railway company to the Van Dusen Harrington Company of the placing of said cars upon said hold tracks, unless what was done at Staples and at Minneapolis, as heretofore set out, constituted such notice.

Among the findings made by the trial court were the following:

"VI. In accordance with the provisions of its Diversion and Reconsigning Tariff, and more particularly Rule 1 thereof, the plaintiff was required to place said carload shipments on hold tracks and send to the defendant notice of the location of the hold tracks on which said cars, and each of them, were placed and no notice of the location of the hold tracks on which the cars described in Exhibit Y, or any of them, were placed was sent or given to the defendant, the consignee named in the bills of lading under which said shipments moved from point of origin to destination.

"VII. The practice of posting notice of the location of the hold tracks on which cars so placed were held on a bulletin board was not in vogue during the time said shipments, or any of them, moved, and no notice of the location of the hold tracks on which said cars were placed was posted on a bulletin board with respect to the cars described in Exhibit Y, or any of them."

As a conclusion of law the court held "that no so-called reconsigning charges as defined in the applicable tariffs of the plaintiff became due with respect to any of the shipments set forth in said Exhibit Y and that defendant is entitled to Judgment."

Judgment was accordingly entered in favor of defendant Van Dusen Harrington Company.

On this appeal the appellant railway company contends:

(1) That what was done at Staples, namely, holding the cars and having samples taken and sending out the manifest, together with what was done on the arrival of the cars at Minneapolis, namely, making out the yard-check lists and the "grab" book, constituted a compliance with rule 1, above quoted.

(2) That Van Dusen Harrington Company, for a number of years, paid charges similar to those involved in the present case without objection, and that it was thereby estopped to question the correctness of the demand for the present charges.

The appellee Van Dusen Harrington Company contends:

(1) That what was done at Staples was not a compliance, nor intended to be a compliance, with rule 1; that the cars at Staples were not held for disposition within the meaning of rule 1, and that they were not held for disposition until after arrival, at Minneapolis; that the samplers at Staples and the samplers at Minneapolis were employed by the Van Dusen Harrington Company solely to get samples; but that they were not agents to receive the notice required by rule 1.

(2) That the decision of this court on the former appeal, relative to the question whether there was a compliance by the railway company with rule 1, became the law of the case, was binding on the trial court, and should be adhered to by this court.

(3) That even though the Van Dusen Harrington Company had paid similar charges in prior years, such payments could not constitute an estoppel, because neither the railway company nor the Van Dusen Harrington Company could waive any part of the tariff; and rule 1 was a part of the railroad tariff on file in accordance with the law.

Three questions are, therefore, presented:

1. Whether appellee, Van Dusen Harrington Company, is estopped.

2. Whether the rule of "law of the case" is applicable.

3. Whether there was substantial evidence to support the findings, above quoted, of the trial court.

■ We think there is no merit in the contention that the Van Dusen Harrington Company was estopped from asserting that rule 1 was not complied with by the railway company. Neither by waiver nor by estoppel can the duly published tariff rules and charges of a common carrier be modified or abrogated. Davis v. Henderson, 266 U. S. 92, 45 S. Ct. 24, 69 L. Ed. 182; Davis v. Cornwell, 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848; Missouri, Kans. & Tex. Co. v. Ward, 244 U. S. 383, 37 S. Ct. 617, 61 L. Ed. 1213; Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; American Ry. Express Co. v. American Trust Co. (C. C. A.) 47 F.(2d) 16.

In Davis v. Henderson, supra, there was involved the rule requiring that orders for cars given to the carrier's local agent must be in writing. Plaintiff, a shipper, contended that the rule had been waived. The Supreme Court said: "There is no claim that the rule requiring written notice was void. The contention is that the rule was waived. It could not be. The transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff."

■ Is the rule of "the law of the case" applicable?

The views of this court on the question when the law of the case is applicable have been expressed in several opinions:

In Pennsylvania Mining Co. v. United Mine Workers, 28 F.(2d) 851, the court, speaking by Judge Kenyon, said at page 852:

"It is the well-established doctrine of the federal courts that, on a second writ of error or appeal, questions of law or fact determined upon the first hearing are not reconsidered, provided the evidence was substantially the same upon both trials. Under such circumstances questions of law determined on a writ of error or appeal are the law of the case, both for the trial court and this court on a second writ of error or appeal. * *

"There should be and is an exception to this rule, viz.: If convinced that a former decision is clearly erroneous and unsound, and works manifest injustice to the parties, an appellate court should not deem itself bound as to such parties by the rule of 'law of the case.' It is the general practice of courts, however, 'to refuse to reopen what has been decided.' "

In Page v. Arkansas Natural Gas Corporation, 53 F.(2d) 27, the court, again speaking by Judge Kenyon, said at page 31: "The rule of 'the law of the case' is of course recognized by this court. The theory is that what has once been determined should not be reopened, well expressed by Mr. Justice Holmes in Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 740, 56 L. Ed. 1152: 'In the absence of statute the phrase, "law of the case," as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' "

See, also, City and County of Denver v. Denver Tramway Corp. (C. C. A.) 23 F.(2d) 287; National Bank of Commerce v. United States (C. C. A.) 224 F. 679; Federal Reserve Bank v. Omaha Nat. Bank (C. C. A.) 45 F.(2d) 511.

■ Bearing in mind the principles thus stated by this and other courts, we turn to the inquiry whether the evidence on the question of the compliance with rule 1 by the railway company was substantially the same on the second trial as on the first.

The record on the first trial clearly shows that the issue as to such compliance was involved; that the facts were largely stipulated relative to what was done at Staples and how it was done; and the same is true as to what was done in the railroad yard at Minneapolis on the arrival of the cars at that point.

The testimony on the second trial covered these matters more in detail, and explained the "grab" book, which was not introduced at the first trial.

The trial court held, on the first trial, that rule 1 was complied with by the railway company.

On the first appeal, touching the question of compliance with rule 1, this court said, at page 470 of 32 F.(2d): "That tariff purported to provide literally that which the Commission thought to be an essential basis for a charge of this nature. It is apparent, however, that the provisions of the tariff, thus embodying the suggestions of the Interstate Commerce Commission, were not observed in practice. No notice of location of

the hold tracks on which the cars were placed was sent to the consignee, or posted on any bulletin board. In the petition, in the stipulations filed, and in the testimony of the assistant general freight agent of appellee, it is stated that the hold tracks in question were located within the switching limits of Minneapolis. At the argument, counsel for appellee contended that the tracks at Staples —which are called 'sampling tracks,' where samples were taken, are hold tracks within the meaning of the tariff. Even so, no information as to the location of such tracks was given other than the fact that the cars in question had reached the station at Staples; and those tracks could not discharge the functions required of hold tracks, which are supposed to be located conveniently for the taking of new samples if desired. It is insisted by appellant that the strict observance of this rule is important for protection of consignee in case additional samples are required in order that the same may be examined and a disposition of the cars made within the free time. It is probably true that upon inquiry at the yard office the consignees could ascertain the location of the hold tracks in North Minneapolis with greater or less delay, but it cannot be denied that the terms of the tariff, which would appear to be conditions precedent to the right to impose these reconsignment charges, were not observed. Such tariffs are construed strictly. The carrier was not compelled to publish its tariff in these precise terms; having done so, it must abide by them."

A careful examination of the record on the first trial and a comparison with the record on the second trial has led us to the conclusions that the question of the compliance by the railway company with rule 1 was in issue on both trials; that this court, on the first appeal, held that there was not a compliance; that the main facts disclosed by the evidence on this issue at the second trial were substantially the same as the facts stipulated on the first trial, though more detailed in some respects.

We are not clearly convinced that the decision on the former appeal was erroneous and unsound, but on the contrary think it was correct; the parties were simply held to the plain, unequivocal provisions of the tariff.

The law of the case, therefore, applies and renders it unnecessary and improper for us to pass upon the merits of the question a second time.

The judgment is affirmed.