## CHESAPEAKE & OHIO RAILWAY COMPANY *v.* WESTINGHOUSE, CHURCH, KERR & CO., INC.

## MELLON, DIRECTOR GENERAL OF RAILROADS, *v.* WESTINGHOUSE, CHURCH, KERR & CO., INC.

CERTIORARI TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

Nos. 170 and 171. Argued January 25, 1926.—Decided March 1, 1926.

1. Where spotting service is included in the line-haul tariff charge, the carrier can not charge extra for it, even when done by assigning a special engine and crew for handling the cars on a shipper's industrial tracks to expedite delivery at a time of freight congestion at the terminal. P. 265.
2. A contract for such special service *held* void, and the extra charge under it uncollectible, both because such charge was illegal and because such special service was an undue preference. P. 266.

138 Va. 647, affirmed.

CERTIORARI to judgments of the Supreme Court of Appeals of Virginia, affirming judgments rendered for the respondents in two actions brought, the one by the Railway Company, the other by the Director General of Railroads, to recover special charges for the use of an engine and crew.

*Messrs. Sherlock Bronson* and *David H. Leake,* with whom *Messrs. Walter Leake* and *A. A. McLaughlin* were on the brief, for petitioners.

No obligation rests upon a carrier, under the "line-haul" tariff rate, to furnish switching and "spotting" service solely for the convenience of a shipper. Under the "line-haul" tariff rate for carload shipments, and what is spoken of as the "standard terminal rule," filed with the Interstate Commerce Commission, the shipper is ordinarily entitled to one placement of a car, free of further charge, upon industrial sidings or spur tracks, such as involved here. *The Los Angeles Switching Case,* 234 U. S. 294; 18 I. C. C. 310. See 57 I. C. C. 677; *Pittsburgh Forge & Iron Co.* v. *Director General,* 59 I C. C. 29; *Downey Shipbuilding Corp.* v. *S. F. R. T. Ry.,* 60 I. C. C. 543; *Merchants' Shipbuilding Corp.* v. *P. R. R. Co.,* 61 I. C. C. 214.

The engine and crew, after the making of the contract, were under the exclusive control of the respondent and conformable to its convenience at all times while the contract was in force. By this arrangement respondent was enabled to get better and more expeditious service than would otherwise have been possible under existing conditions. The Supreme Court of Appeals, in declaring the contract void for supposed want of consideration, necessarily held that respondent was entitled, under the tariffs, to the exclusive use of an engine and crew—which was the precise service it received. This holding we believe to be untenable and certainly at variance with the rulings of the Interstate Commerce Commission.

The obligation to place or "spot" cars, under the "line-haul" tariff rate, does not contemplate the furnishing of special facilities to a shipper to meet abnormal and unprecedented conditions. The Supreme Court of Appeals, in its decision, evidently overlooked the consideration that, while it is the duty of a carrier under its "line-haul" rate to once "spot" a car for a shipper, this duty is subject to the same duty which is owed to all other shippers at the same time, and same place, and

under the same conditions; and that, consequently, it is not the carrier's duty to furnish special facilities to "spot" cars for a special shipper. Such a shipper, so far as common carrier duty is concerned, must bide his time along with all other shippers, and wait for the placement of his cars in regular course. Moreover, since a common carrier is only under obligation to furnish facilities adequate for normal conditions, if abnormal, and particularly if unprecedented, conditions exist, such as undoubtedly prevailed in the present case, the carrier is under no further duty than to use such facilities as it has at hand with such reasonable dispatch as these facilities will afford, and this, too, with due regard to the equal rights of all the shippers respectively. *P. R. R. Co.* v. *Puritan Coal Co.*, 237 U. S. 121. The effect of war conditions upon the obligations of carriers was considered by the Interstate Commerce Commission in *Waste Merchants Assoc.* v. *Director General*, 57 I. C. C. 686.

The contract did not constitute an undue preference, or an illegal expedited service. The contract, being one for a mere rental of equipment, was not a common-carrier service, and was in no wise illegal under the Interstate Commerce Act or otherwise. 4 Elliott on Railroads, 3d ed., § 2101, p. 463.

If the carrier "was under no statutory or common law obligation to render the special service, there were no reasons of public policy which forbade the rendition of such service upon such terms as the parties might stipulate." Mr. Justice Lurton in *Clough* v. *Grand Central R. Co.* 155 Fed. 81; *Santa Fe, etc. R. Co.* v. *Grant Bros. Cons. Co.*, 228 U. S. 177; *Chicago, etc. R. Co.* v. *Maucher*, 248 U. S. 359. Cf. *Davis* v. *Cornwell*, 264 U. S. 560.

That the rental or letting out of equipment by carriers, for a special service as, for instance, to a circus, is not within ordinary common-carrier duties, is recognized in *Chicago, etc. R. Co.* v. *Maucher, supra,* and has been

so held in many decisions of state and federal courts. *Clough* v. *Grand Trunk R. Co., supra; Robertson* v. *Old Colony R. Co.,* 156 Mass. 525; *Coup.* v. *Wabash, etc. R. Co.,* 56 Mich. 111; *Forepaugh* v. *Del., etc. R. Co.,* 128 Pa. 217; *Chicago, etc. R. Co.* v. *Wallace,* 66 Fed. 506; *Wilson* v. *Atlantic, etc. R. Co.,* 129 Fed. 774; *Yazoo & M. V. R. Co.* v. *Crawford,* 107 Miss. 355; *Sager* v. *Northern Pac. R. Co.,* 166 Fed. 526.

If the question of a preferential or expedited service is here involved, it is believed the failure to exact payment for the engine and crew will constitute a preference, since respondent is thereby given a preference over other shippers during the term of this contract of a service valued by the parties themselves at the sum of $13,298.93. *C. & A. R. Co.* v. *Kirby,* 225 U. S. 155; *Davis* v. *Cornwell, supra.* Preferences and discriminations, in violation of the Acts of Congress, may as well result from acts not within common-carrier duties or transportation service, as otherwise. *New Haven R. Co.* v. *I. C. C.,* 200 U. S. 361; *United States* v. *Union Stock, etc., Co.,* 226 U. S. 307.

The respondent was constructing embarkation facilities at Newport News for the Government, in war time, on a contract for emergency work. The contract upon which the suits are premised was one in which the Government was vitally interested. Certain it is that it concerned the "military traffic." It follows, then, that the shipments handled by the leased engine were shipments for the United States Government, of war materials in time of a national emergency.

Section 6 of the Interstate Commerce Act, August 29, 1916, 39 Stat. 604; also § 3, par. (1).

*Mr. Wirt T. Marks, Jr.,* with whom *Messrs. Henry W. Anderson* and *Thomas B. Gay* were on the brief, for respondent.

The facilities furnished and services performed were a part of "transportation" as defined by the Interstate Commerce Act. § 1, par. (2); Act of June 18, 1910, c. 309, § 7, 39 Stat. 544; *Cleveland, etc., Ry. Co.* v. *Dettlebach,* 239 U. S. 588; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424; *Southern Ry. Co.* v. *Prescott,* 240 U. S. 632; *P. R. R. Co.* v. *Lowman Shaft Coal Co.,* 242 U. S. 120; *United States* v. *Texas & Pacific R. Co.,* 185 Fed. 820.

The facilities furnished and services performed being "transportation" facilities and services, the petitioners violated §§ 3 and 6 of the Interstate Commerce Act and § 1 of the Elkins Act, if the facilities and services were in addition to those provided for in the lawfully filed tariffs. *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424; *Davis* v. *Cornwell,* 264 U. S. 560.

The facilities furnished and the services performed being "transportation" facilities and services, the petitioners violated § 1, par. (3), § 2, and § 6, par. (7) of the Interstate Commerce Act, if the facilities and services were not in addition to those provided for in the lawfully filed tariffs. *Louisville & Nashville R. Co.* v. *Maxwell,* 237 U. S. 94; *Louisville & Nashville R. Co.* v. *Mottley,* 219 U. S. 467; *Chicago, etc., Ry. Co.* v. *United States,* 219 U. S. 486; *United States* v. *Union, etc., Transit Co. of Chicago,* 226 U. S. 286; *United States* v. *Tozer,* 37 Fed. 635; *Lewis, Leonhardt & Co.* v. *Southern Ry. Co.,* 217 Fed. 321.

The alleged agreement, being violative of the Interstate Commerce Act and the Elkins Act, and the corresponding provisions of the statutes of the State of Virginia, is void and no action can be maintained thereon. *Cleveland, etc., Ry. Co.* v. *Hirsch,* 204 Fed. 849; *Central R. R. Co. of N. J.* v. *U. S. Pipe Line Co.,* 290 Fed. 983; *Lewis, Leonhardt & Co.* v. *Southern Ry. Co.,* 217 Fed. 321.

MR. JUSTICE BRANDEIS delivered the opinion of the
Court.

These actions were brought in a state court of Virginia
to recover amounts alleged to be due for the use of an
engine and crew rented or assigned by the Chesapeake &
Ohio Railway Company to Westinghouse, Church, Kerr
& Co., Inc., under a contract made in September, 1917.
The latter corporation was engaged in construction work
for the Government on. premises at Newport News con-
nected by industrial tracks with the Railway's main line.
Owing to war conditions, there was then serious conges-
tion of traffic at Newport News, and the Railway failed
duly to perform spotting service for the company.   To
remedy this condition the engine and crew were assigned
to the exclusive use of its traffic, payment to be made
therefor as prescribed in the contract.   The use continued
from that date until April, 1918.   The Railway sued for
the period prior to December 28, 1917; the Director Gen-
eral for that later.   The defences were want of considera-
tion and that the contract was void because it violated the
Interstate Commerce Act and a similar law of the State.
A judgment for the defendant, entered in each case by the
trial court, was affirmed by the Supreme Court of Appeals
on the ground of want of consideration.   138 Va. 647.
This Court granted writs of certiorari.   266 U. S. 598.   No
question under the state law is before us.

The service of spotting cars was included in the line
haul charge under both interstate and state tariffs.   The
Railway contends that under the tariffs no obligation
rested upon the carrier either to furnish spotting service
solely for the convenience of a shipper or to furnish him
special facilities to meet abnormal and unprecedented
conditions; that the contract was, therefore, not without
consideration; and that, being for rental of equipment,
it was not for a common carrier service and, hence, a con-
tract therefor was legal under the Interstate Commerce

Act, although no tariff provided for the charges. The service by special engine and crew contracted for and given was not spotting solely for the convenience of the shipper. It was the spotting service covered by the tariff. Compare *Car Spotting Charges,* 34 I. C. C. 609; *Downey Shipbuilding Corp.* v. *Staten Island Rapid Transit Ry. Co.,* 60 I. C. C. 543. It is true that abnormal conditions may relieve a carrier from liability for failure to perform the usual transportation services, but they do not justify an extra charge for performing them. The carrier is here seeking compensation in excess of the tariff rate for having performed a service covered by the tariff. This is expressly prohibited by the Interstate Commerce Act, Act of February 4, 1887, c. 104, § 6(7), 24 Stat. 379, 381, as amended. A contract to pay this additional amount is both without consideration and illegal. It is no answer that by virtue of the contract the shipper secured the assurance of due performance of a transportation service which otherwise might not have been promptly rendered; that ordinarily rental of engine and crew is not a common carrier service; and that such rental may be charged without filing a tariff providing therefor. Compare *Chicago, Rock Island & Pacific Ry. Co.* v. *Maucher,* 248 U. S. 359. To so assure performance to a shipper was an undue preference. Hence the contract would be equally void for illegality on this ground. *Davis* v. *Cornwell,* 264 U. S. 560.

*Affirmed.*