624

PAN AMERICAN PETROLEUM CORPO-
RATION v. UNITED STATES et al.
and eight other cases.

Nos. 314, 315, 317, 331.

Nos. 690–693, 718.

District Court, E. D. Louisiana.
District Court, S. D. Texas.

Feb. 24, 1937.

Luther M. Walter, Nuel D. Belnap, John S. Burchmore, and Walter, Burchmore & Belnap, all of Chicago, Ill., for plaintiffs.

Elmer B. Collins, Sp. Asst. to Atty. Gen., and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and Nelson Thomas, Atty., Interstate Commerce Commission, both of Washington, D. C., for defendants.

Before FOSTER, Circuit Judge, and BORAH and KENNERLY, District Judges.

KENNERLY, District Judge.

These are suits in equity in the District Court of the United States for the Eastern District of Louisiana (New Orleans and Baton Rouge Divisions) and for the Southern District of Texas (Houston Division) under the Act of Congress of October 22, 1913 (38 Stat. 219, sections 41 (27, 28), 45, 46, and 47 of title 28, U.S.C.A.), by the plaintiffs (hereinafter named) against the defendants (hereinafter named), to enjoin, restrain, and set aside orders of the Interstate Commerce Commission requiring that the railroad companies named as defendants cease, desist from, and discontinue the payment to plaintiffs of allowances for performing certain terminal services hereinafter more fully set out and generally referred to as "spotting."

The original report of the commission, on which orders complained of are based,

is reported as: Practices of Carriers Affecting Operating Revenues or Expenses, 209 I.C.C. 11.

Supplemental reports, on which orders complained of are also based, will be found in the printed reports of the commission, as follows: [1]Mexican Petroleum Corporation of Louisiana, Inc., Terminal Allowance, 209 I.C.C. 394; Celotex Company Terminal Allowance, 209 I.C.C. 764; Great Southern Lumber Company-Bogalusa Paper Company Terminal Allowance, 209 I.C.C. 793; Standard Oil Company of Louisiana Terminal Allowance, 209 I.C.C. 68; Humble Oil & Refining Company Terminal Allowance, 209 I.C.C. 727; Magnolia Petroleum Company Terminal Allowance, 209 I.C.C. 93; Texas Company Terminal Allowance at Houston, Tex., 209 I.C.C. 767; Gulf Refining Company Terminal Allowance, 209 I.C.C. 756; Texas Company Terminal Allowance at Port Arthur, Texas, 44th Supplemental Report.

There were applications for interlocutory injunctions which were heard by a Three Judge Court organized under section 47, title 28 U.S.C.A., and granted, and the cases have now been heard together, on one record, on the merits by the same court, and may be disposed of in one opinion.

(a) No. 314 is a suit by the Pan American Petroleum Corporation, plaintiff, against the United States of America, the Yazoo & Mississippi Valley Railroad Company (for brevity called Y. & M. V. Ry. Company), and the Illinois Central Railroad Company, with the Interstate Commerce Commission intervening. Plaintiff is the successor of the Mexican Petroleum Corporation of Louisiana, Inc. (for brevity called Mexican Corporation), and owns and operates as did Mexican Corporation, at Destrehan, La., on the line of the Y. & M. V. Ry. Company a large oil refinery plant. The plant is situated south of and adjacent to the tracks of the Y. & M. V. Ry. Company. There are within the plant inclosure tracks which connect with the tracks of railway company, and are used for the transportation of cars moving in interstate commerce between the places where they are loaded and unloaded within the inclosure of the plant and the railway company's tracks, the service of such transportation being performed, formerly by Mexican Corporation and now by plaintiff under a tariff promulgated by the railway company, reading as follows:

"Terminal Allowances to the Mexican Petroleum Corporation of Louisiana at Destrehan, La.

"On traffic to and from points on or reached via The Yazoo and Mississippi Valley Railroad Company or connections.

"On all carload shipments (including trap cars containing 10,000 pounds or more of less-carload freight) destined to or coming from the plant of the Mexican Petroleum Corporation of Louisiana at Destrehan, La., the terminal switching service is performed by the Mexican Petroleum Corporation of Louisiana for account of The Yazoo and Mississippi Valley Railroad Company. Such terminal switching service, for which this allowance is made, consists of the handling of the cars between the point of interchange of such cars with this Company and the point at which such cars are unloaded, or the point at which such cars are loaded in said plant.

"For such terminal service performed for The Yazoo and Mississippi Valley Railroad Company by the Mexican Petroleum Corporation of Louisiana, at Destrehan, La., the Mexican Petroleum Corporation of Louisiana will be allowed 90 cents per loaded car, which will include the handling of the empty cars in the reverse direction.

"This allowance is not in excess of the average actual cost of the service as disclosed in a joint study of the operations of the plant facility made during period June 4, 1929 to June 8, 1929, inclusive, also June 10, 1929, and filed with the Interstate Commerce Commission."

The cease and desist order of the commission of which plaintiff complains as requiring defendant railroads to cease and desist making such allowance, under such tariff, is dated June 25, 1935, and is as follows:

"Upon further consideration of the record in this proceeding concerning the lawfulness and propriety of the allowance paid by The Yazoo and Mississippi Valley Railroad Company to the Mexican Petroleum Corporation of Louisiana, Incorporated, for performance by the latter of spotting service within its plant at Destrehan, La., and the Commission having un-

---

[1] Pan American Petroleum Corporation, petitioner in No. 314, in equity, is successor to the Mexican Petroleum Corporation of Louisiana, Inc., in ownership and operation of Destrehan refinery.

der date of May 14, 1934, made and filed a report Propriety of Operating Practices —Terminal Services, 209 I.C.C. 11, containing its legal conclusions with respect to the general situation presented, and the division having on the date hereof made and filed a supplemental report containing its findings of fact and conclusions with respect to the allowance paid to the Mexican Petroleum Corporation of Louisiana, Incorporated, which reports are hereby referred to and made a part hereof, and the division having found in said supplemental report that by the payment of said allowance The Yazoo and Mississippi Valley Railroad Company violates the Interstate Commerce Act as set forth in the above-mentioned reports:

"It Is Ordered, That The Yazoo and Mississippi Valley Railroad Company be, and it is hereby, notified and required to cease and desist on or before August 22, 1935, and thereafter to abstain from such unlawful practice.

"By the Commission, Division 6."

(b) No. 315 is a suit by Colin C. Bell and Wm. Tracy Alden, trustees of the Celotex Company, plaintiffs [2] (for brevity called Celotex Corporation), against the United States of America, Texas & New Orleans Railroad Company (for brevity called T. & N. O.), the Texas & Pacific Railway Company (for brevity called T. & P.), the Missouri Pacific Railroad Company (L. W. Baldwin and Guy A. Thompson, trustees) (for brevity called M. P.), and the Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans (for brevity called Terminal Company), with the Interstate Commerce Commission intervening.

Celotex Corporation (as did its predecessors) owns and operates a plant for the manufacture of celotex board, manufactured principally from bagasse, the dried refuse of sugar cane. The plant is located at Marrero, La. The plant is served by the three defendant railroads (T. & N. O., T. & P., and M. P.), the Terminal Company performing the switching for the T. & P. and the M. P.

The plant is in two sections which are separated by the tracks of the T. & N. O. and the Terminal Company. As in case No. 314, there are tracks used for the transportation of cars moving in interstate commerce between the tracks of the T. & N. O. and the tracks of the Terminal

Company, upon the one hand, and the place or places within the plant inclosure, where cars are loaded and unloaded, the service of such transportation being performed by Celotex Corporation (and by its predecessors), for which, first under agreements openly made, and later under tariffs, duly promulgated, an allowance was made Celotex Corporation.

The order of the commission of which plaintiff complains seeks to require the defendant railroads to cease and desist making such allowance.

(c) No. 317 is a suit by the Great Southern Lumber Company (for convenience called Lumber Company) and Bogalusa Paper Company, Inc. (for convenience called Paper Company), plaintiffs, against the United States of America, Gulf, Mobile & Northern Railroad Company, with the Interstate Commerce Commission intervening.

Lumber Company is engaged in the lumber and logging business, and the Paper Company in the paper manufacturing business. They together occupy a large industrial area near Bogalusa, La. Adjacent to them, but in no manner connected with them, are three other industrial plants, which are referred to for convenience as adjacent plants. As in case No. 314, there are tracks used for the transportation of cars moving in interstate commerce between the tracks of Railroad Company and the point or points where cars are loaded or unloaded by Lumber Company and Paper Company and adjacent plants. Lumber Company performs this service of transportation not under a regular tariff such as was promulgated in No. 314, but in the form of monthly lump-sum reimbursements by the Railroad Company, for wages and costs of materials and supplies used in connection with such work. The order of the commission complained of seeks to require the railroad to cease and desist making such lump-sum monthly payments.

(d) No. 331 is a suit by the Standard Oil Company of Louisiana, plaintiff, against the United States of America, Illinois Central Railroad Company, Yazoo & Mississippi Valley Railroad Company, Louisiana & Arkansas Railway Company, and the New Orleans, Texas & Mexico Railway Company (Baldwin and Thompson, trustees), with the Interstate Commerce Commission intervening.

---

[2] Since the institution of the suit, the trustees have been succeeded by the Celotex Corporation of Delaware.

Plaintiff owns, maintains, and operates an oil refinery (one of the largest in the world) at North Baton Rouge, La. As in case No. 314, there are tracks connecting those belonging to or used by the railroad defendants with the place or places where cars are unloaded in the plant, and over which tracks cars moving in interstate commerce are transported by plaintiff under a tariff which makes plaintiff an allowance for such service. The order of the commission complained of seeks to require the defendant railroads to cease and desist making such allowance.

(e) No. 690 is a suit by the Humble Oil & Refining Company, plaintiff, against the United States of America, the Texas & New Orleans Railroad Company, Missouri Pacific Railroad Company (Baldwin and Thompson, trustees), the Beaumont, Sour Lake & Western Railway Company (Baldwin and Thompson, trustees), defendants, with the Interstate Commerce Commission intervening.

Plaintiff owns and operates a large oil refinery at Baytown, Tex., which is served by the railroad defendants. Tracks connect numerous locations for loading and unloading cars within the refinery property with the tracks of the railroad companies, over which tracks cars moving in interstate commerce are transported by plaintiff, and for which plaintiff is made an allowance under tariffs of the railroads. The order complained of required the railroads to cease and desist making such allowance.

(f) No. 691 is a suit by the Magnolia Petroleum Company, plaintiff, against the United States of America, the Kansas City Southern Railway Company, and the Texas & New Orleans Railroad Company, defendants, with the Interstate Commerce Commission intervening.

Plaintiff owns and operates an oil refinery at Chaison, Tex. The railroad defendants have tracks adjacent to such refinery, and there are tracks leading therefrom to the loading and unloading points within the refinery property, over which tracks cars moving in interstate commerce are transported by plaintiff, and for which plaintiff is made an allowance under tariffs of the railroad companies. The order complained of requires the railroads to cease and desist making such allowance.

(g) No. 692 is a suit by the Texas Company, plaintiff, against the United States of America, the Texas & New Orleans Railroad Company, the Missouri Pacific Railroad Company (Baldwin and Thompson, trustees), the International-Great Northern Railroad Company (Baldwin and Thompson, trustees), the Beaumont, Sour Lake & Western Railway Company (Baldwin and Thompson, trustees), the St. Louis, Brownsville & Mexico Railway Company (Baldwin and Thompson, trustees), the Atchison, Topeka & Santa Fe Railway Company, the Gulf, Colorado & Santa Fe Railway Company, the Missouri-Kansas-Texas Railroad Company of Texas, and the Burlington-Rock Island Railroad Company, defendants, with the Interstate Commerce Commission intervening.

Plaintiff owns a plant at Houston, Tex., referred to as the Calena-Signal Plant, served by the defendant railroads, but the Port Terminal Railroad at Houston generally performs switching services for the railroads. Plaintiff, however, transports cars moving in interstate commerce over tracks between those of the railroads and Terminal Company and the point within the plant where cars are loaded or unloaded, for which plaintiff is made an allowance under tariffs promulgated by the railroad defendants. The order of the commission complained of directs the railroad defendants to cease and desist making such allowance.

(h) No. 693 is a suit by the Gulf Refining Company, plaintiff, against the United States of America, the Texas & New Orleans Railroad Company, and the Kansas City Southern Railway Company, defendants, with the Interstate Commerce Commission intervening.

Plaintiff owns and operates a refinery plant at Port Arthur, Tex., which is served by the defendant railroads. Over tracks leading from the point or points of the loading or unloading of cars, plaintiff transports cars moving in interstate commerce, receiving therefor an allowance under tariffs of the railroad defendants. The order complained of directs the railroads to cease and desist making such allowance.

(i) No. 718 is a suit by the Texas Company, plaintiff, against the United States of America, the Interstate Commerce Commission, the Texas & New Orleans Railroad Company, and the Kansas City Southern Railway Company.

Plaintiff is engaged in the refining, manufacture, and sale of petroleum and its products, and owns and operates three plants, known as the Asphalt Plant at Port

627

628

Neches, the Island Plant, and the Refinery Plant at Port Arthur, Tex. All of the plants are large and extensive in size, and are served by the defendant railroads. Over tracks' connecting the point or points of loading and unloading with the tracks of the railroad companies, plaintiff transports cars moving in interstate commerce, for which it receives an allowance under tariffs of the railroad defendants. The order complained of directs the railroads to cease and desist making such allowance.

Except in No. 317, where the allowance is in the form of a monthly lump sum, the tariff quoted in the statement in No. 314 is typical of the tariffs in the other cases, and the order of the commission there quoted is typical of the order complained of in the other cases.

The defendant railroads, in obedience to such orders of the commission, undertook to cancel and discontinue the allowance set forth in such tariffs, and these suits followed.

■ **1.** The first question is whether the work in transporting, switching, and spotting cars, for which the plaintiffs herein were paid, or were made an allowance under the tariffs, is a service which the railroads involved are required to perform as transportation or a part of transportation.

We think that under the evidence, the question must be affirmatively answered. We think it clear that the railroads involved are required, under the Law, to perform such service as a part of transportation. Subdivisions 3, 4, 5, and, 6, § 1, title 49, U. S.C.A.; Chesapeake & O. Ry. Co. v. Westinghouse, Church, Kerr & Co., 270 U.S. 260, 265, 46 S.Ct. 220, 221, 70 L.Ed. 576; Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 264, 33 S.Ct. 916, 57 L.Ed. 1472; Union Lime Co. v. Chicago & N. W. Ry. Co., 233 U.S. 211, 217, 34 S.Ct. 522, 58 L.Ed. 924; Los Angeles Switching Case, 234 U.S. 294, 310, 34 S.Ct. 814, 58 L.Ed. 1319.

There is no evidence that such railroads are prohibited by the plaintiffs from performing such service, nor that there are physical conditions which prevent them from doing so. Indeed, there appears to be no "abnormal conditions" of any kind which would serve to relieve the railroads involved of the duty. Chesapeake & O. Ry. Co. v. Westinghouse, Church, Kerr & Co., supra.

■ **2.** Having the duty to perform the service, the railroads involved properly and lawfully contracted with the respective plantiffs to perform it, and properly and lawfully made such plaintiffs allowances therefor in their tariffs. Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42, 32 S.Ct. 22, 56 L.Ed. 83; Mitchell Coal & Coke Co. v: Pennsylvania R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472; Atchison, Topeka & Santa Fe Railway Co. v. U. S., 232 U.S. 199, 34 S.Ct. 291, 58 L.Ed. 568.

■ **3.** While the commission without doubt has the power (paragraph 1, § 15, title 49, U.S.C.A.) to determine whether such allowances are reasonable or unreasonable in amount, whether they do or do not give the plaintiffs an unlawful preference, or whether they unlawfully discriminate against others similarly situated, etc. (Interstate Commerce Comm. v. Louisville & Nashville R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431; Southern Pacific Co. v. Interstate Commerce Comm., 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283; Interstate Commerce Comm. v. Stickney, 215 U.S. 98, 30 S.Ct. 66, 54 L.Ed 112; Interstate Commerce Comm. v. Northern Pacific Ry. Co., 216 U. S. 538, 30 S.Ct. 417, 54 L.Ed. 608; United States v. Baltimore & Ohio R. Co., 293 U. S. 454, 55 S.Ct. 268, 79 L.Ed. 587), we think that under the evidence here, the commission was without power to wholly prohibit such allowances.

■ **4.** To support a cease and desist order because the rate or practice is unreasonable, preferential, discriminatory, etc., there must be the necessary jurisdictional findings of fact by the commission. United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023; Atchison, Topeka & Santa Fe Ry. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382; Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291; Southern Pacific Co. v. Interstate Commerce Commission, 219 U.S. 433, 31 S.Ct. 288, 55 L. Ed. 283; Beaumont, Sour Lake & Western Ry. Co. v. United States, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221. No sufficient findings appear either in the orders themselves, or in the reports which are made a part of the orders.

It follows that plaintiffs are entitled to the relief for which they pray.

Let decree be drawn and presented accordingly, along with suggested findings

of fact and conclusions of law if desired. The court reserves the right to file findings of fact and conclusions of law in either or all the cases upon request of any party.

