## LOUISIANA DEVELOPMENT CO., Inc., v. UNITED STATES et al.

### No. 444.

District Court, E. D. Louisiana.

March 6, 1937.

Walter, Burchmore & Belnap, Luther M. Walter, Nuel D. Belnap, and John S. Burchmore, all of Chicago, Ill., for plaintiff.

Elmer B. Collins, Sp. Asst. to Atty. Gen., and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and E. M. Reidy, Atty., Interstate Commerce Commission, both of Washington, D. C., for defendants.

Before FOSTER, Circuit Judge, and BORAH and KENNERLY, District Judges.

BORAH, District Judge.

This suit in equity is brought under the Act of Congress of October 22, 1913 (38 Stat. at Large 219; 28 U.S.C.A. § 41, subsecs. 27, 28; sections 45, 46, 47), to enjoin and restrain the United States of America and the Interstate Commerce Commission from enforcing the terms of a cease and desist order, and for a decree adjudging the order void; and, in addition thereto, seeks to enjoin and restrain the defendant carriers from complying with the aforesaid order of the commission.

The challenged order was entered by the commission on August 24, 1936, in its docket Ex Parte 104, Practices of Carriers Affecting Operating Revenues or Expenses, Part II, Terminal Services; said report and order being subtitled "Fifty-Eight Supplemental Report of the Commission, Louisiana Development Company," and cessation of the condemned acts were ordered on or before October 15, 1936.

Upon the filing of the bill of complaint, a statutory court of three judges was organized and convened to hear plaintiff's application for an interlocutory injunction. After receiving evidence and hearing counsel in oral argument, the court denied plaintiff's application for an interlocutory injunction; thereupon the matter was then submitted on final hearing subject to the filing of briefs.

Unlike Pan American Petroleum Corp. v. United States of America et al., and the group of cases decided by this court on February 24, 1937, 18 F.Supp. 624, this suit does not involve "intraplant spotting," but involves the question of whether a carrier is obligated under the tariff rate to or from the town of Winnfield, La., to perform a service some distance beyond the switching limits of the town as prescribed in the tariff schedule.

Plaintiff herein, the Louisiana Development Company, operates a salt mine and plant in the vicinity of the town of Winnfield, La., from which it ships salt in carloads, as well as other commodities, and these shipments move over the lines of defendant carriers in interstate commerce. The Louisiana Development Company also receives at its plant carload shipments of freight moving over the lines of defendants from points of origin in other states, including points of origin on other lines of railways in through routes in

which said defendants participate as line-haul carriers into Winnfield.

On July 6, 1931, the commission, of its own motion and without formal pleading, entered upon a general investigation of the terminal service performed by railroad companies throughout the United States. As a result of that investigation, the commission issued its main report on May 14, 1935, in which it sets forth its legal conclusions with respect to the general situation presented. The principles which it announced are stated in the syllabus of the report, as follows:

"Upon investigation into practices of carriers affecting operating revenues or expenses with relation to terminal service of Class I carriers by railroad, found that:

"1. When a carrier is prevented from performing an uninterrupted service to the points of loading or unloading within the confines of an industrial plant because of some action or disability of the industry or its plant, the carrier's duty with respect to the delivery or receipt of cars does not extend beyond the point of interruption or interference, and any allowance to the industry for performing the service beyond such points or the performance of service by the carrier beyond such points without proper charge is unlawful in violation of section 6 of the act [49 U.S.C.A. § 6].

"2. At many industries delivery and receipt of freight is effected by carriers on interchange tracks because of interference or interruption to the work of both the industry and the carrier which would be encountered beyond such tracks. Under such circumstances, delivery or receipt on such tracks constitutes delivery or receipt under the line-haul rates.

"3. When the spotting service at an industry requires a service in excess of that required in making simple placement or the equivalent of team track spotting, such service is in excess of that required of a common carrier under its line-haul rate, and any allowance to the industry for performing such service or the performance thereof by the carrier without charge over and above the line-haul rate is unlawful in violation of section 6 of this act.

"4. The payment by respondents of allowances to individual industries for the performance of spotting service at the latter's convenience, or the assignment by respondents of locomotives to perform similar service without charge, dissipates respondents' funds and revenues, is not in conformity with efficient and economical management as contemplated by the Interstate Commerce Act, and is not in the public interest."

Following its main report, the commission issued various supplemental reports containing its discussion of the evidence, findings of fact, and conclusions with respect to certain particular plants and industries. In its 58th Supplemental Report the commission set forth its report and requirements with reference to the allowance paid to plaintiff herein. The facts as developed in this supplemental report show that up until the time they were restrained by the commission from so doing, the carriers were under a rate covering transportation service to or from the town of Winnfield, La., not only performing that service under their line-haul rates, but, in addition, were paying to plaintiff an allowance of $8 per loaded car for hauling the traffic an additional distance of approximately six miles to a point west of Winnfield where the industry conducts its mining operation. That the traffic to and from the mine was performed by the plaintiff with its own power and moved over its privately owned track for a distance of about one mile from the mine, thence 3.69 miles over the private track of the Southern Mineral Company to a connection with the spur of the Louisiana & Arkansas Railway Company, and thence for a distance of 1.75 miles to the points of interchange with the connecting lines at Winnfield. Furthermore, that none of the carriers had trackage rights over the private track owned by the Southern Mineral Company, nor did the Tremont & Gulf Railway Company or the Chicago, Rock Island & Pacific Railway Company have any right to operate over the tracks of the Louisiana & Arkansas Railway Company. It further appears that prior to the commencement of operations at the mine that plaintiff made an arrangement with the three carriers serving Winnfield whereby plaintiff was to operate its own locomotive between the mine and Winnfield and receive an allowance of $8 per car. The amount of the allowance approximated the cost of the service and was less than defendants believed it would cost them to perform the service and less than plaintiff believed it would cost it to furnish the facilities and do the work; how-

ever, no cost study was made in the determination of the amount of the allowance. Pursuant to this arrangement and in due course the carriers filed tariffs which were accepted by the commission and which provided for the payment of an allowance of $8 per loaded car to the plaintiff for each loaded car handled by it between the mine and Winnfield.

The commission's 58th Supplemental Report was accompanied by the following order:

"Upon further consideration of the record in this proceeding concerning the lawfulness and propriety of allowances paid by the Louisiana & Arkansas Railway Company, The Chicago, Rock Island and Pacific Railway Company and the Tremont & Gulf Railway Company to the Louisiana Development Company for the performance by the latter of spotting service within its plant at Winnfield, La., and the Commission having under date of May 14, 1935, made and filed a report, Propriety of Operating Practices—Terminal Services, 209 I.C.C. 11, containing its legal conclusions with respect to the general situation presented, and the division having on the date hereof made and filed a supplemental report containing its findings of fact and conclusions with respect to the allowances paid to the Louisiana Development Company, which reports are hereby referred to and made a part hereof, and the division having found in said supplemental report that by the payment of said allowances the Louisiana & Arkansas Railway Company, The Chicago, Rock Island and Pacific Railway Company and the Tremont & Gulf Railway Company violate the Interstate Commerce Act as set forth in the above mentioned reports:

"It is ordered, That the Louisiana & Arkansas Railway Company, The Chicago, Rock Island and Pacific Railway Company and the Tremont & Gulf Railway Company be, and they are hereby notified and required to cease and desist on or before October 15, 1936, and thereafter to abstain from such unlawful practice."

As will appear from the hereinafter quoted excerpt from the Louisiana & Arkansas Railway Company Local Terminal Tariff No. 1789-L. I.C.C. No. 1452, the allowance in controversy appears to rest on the theory that the yard limits at Winnfield extend to the plant which is located approximately six and one-half miles north and west of said station. In Item No. 285

of the schedule under the junction point of Winnfield, La., the description of the boundaries of switching limits is defined as embracing, "Brick yard spur switch on the north; 2,500 feet south of Depot on the south." Under the heading "Switching allowance to the Louisiana Development Company at Carla and Winnfield, La.," which is item No. 395, the tariff provides:

"An allowance of $8 per car will be made to the Louisiana Development Company at Carla or Winnfield, La., on all carload shipments switched from or to its plant situated within the yard limits of those stations, when the terminal switching service is performed by the Louisiana Development Company's locomotives. The terminal switching service for which this allowance is made consists of the handling of carload shipments between the point of interchange of such cars with this carrier and a point at which such cars are loaded or unloaded at the plant of the Louisiana Development Company."

The tariffs of the other defendant carriers do not define the switching limits at Winnfield.

The findings in the commission's 58th Supplemental Report which is incorporated in its order by reference and which shows the basis on which it condemns the payment of the allowance are as follows:

"We find that the service performed on interstate shipments by the Louisiana Development Company between its mine and Winnfield, La., for which it is paid allowances by respondent carriers is not a transportation service which the carriers are obligated to perform on basis of the Winnfield rate; and that the granting of such allowances results in the payment of rebates to the Louisiana Development Company, and departures from the tariffs of respondents, in violation of sections 2 and 6 of the act [49 U.S.C.A. §§ 2, 6]."

Plaintiff contends that the order of the commission is erroneous in law; that the findings in the commission's 58th Supplemental Report are wholly unsupported by any evidence; that the carriers intended that their Winnfield rates on salt and other commodities should apply to and from plaintiff's sidetracks at its mine as provided in their tariffs; and that the question of ownership of the tracks employed in this service is immaterial under the language of paragraph (3) of section 1 of the In-

terstate Commerce Act (49 U.S.C.A. § 1 (3).

As we view the situation, the case is moot as the commission's order has been complied with and no allowances are now being paid by the carriers to the industry; two of the defendant carriers having on or before the effective date of the commission's order filed supplements canceling the allowances and the third carrier having taken similar action prior to the initial hearing in this cause. In a case of this character, the court's authority when properly exercised is limited to a setting aside of the commission's order, it possesses no general equity powers and consequently has no authority to compel the carriers to restore the allowance or to require the commission to reinstate the tariffs. It follows that the posture of this case now precludes any possibility of this court granting unto plaintiff any adequate or effectual relief. Resort therefore must be had to the commission since it is the only tribunal which can now adequately handle the present situation. Sprunt & Son v. United States, 281 U.S. 249, 50 S. Ct. 315, 74 L.Ed. 832; Jones v. Montague, 194 U.S. 147, 24 S.Ct. 611, 48 L.Ed. 913.

Our conclusion is that the injunction prayed for should be denied and the bill of complaint dismissed for want of equity.

Let decree be drawn and presented accordingly, along with suggested findings of fact and conclusions of law if desired. The court reserves the right to file findings of fact and conclusions of law upon request of any party.