**A & F TRUCKING CORPORATION,**
**Plaintiff,**

v.

**LIGGETT DRUG COMPANY, a Division**
**of Rexall Drug and Chemical Com-**
**pany, Defendant.**

**No. 66 Civ. 195.**

United States District Court
S. D. New York.

May 2, 1966.

Meyer Schiff, New York City, for plaintiff.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for defendant, Bernard H. Goldstein, Robert Whitman, New York City, of counsel.

FRANKEL, District Judge.

In this action by a contract motor carrier for claimed transportation charges, defendant has moved for dismissal under Rule 12(b) (6), Fed.R.Civ.P. Affidavits have supplied undisputed facts making it appropriate to dispose of the motion as one for summary judgment under Rule 56.

### I.

On December 14, 1962, the parties made a written agreement, effective from January 2, 1963, but subject to plaintiff's obtaining a permit from the Interstate Commerce Commission, providing for plaintiff's carriage of defendant's merchandise from the latter's warehouse in Stamford, Connecticut, to its company-owned stores and franchised agency stores in some seven eastern states.[1] On January 28, 1963, plaintiff obtained the required I.C.C. permit authorizing its operation as a contract car-

1. At the time of the agreement Liggett Drug Company, Inc., was a wholly-owned

rier serving defendant as its sole shipper. The parties then proceeded to work under their agreement, which reserved to defendant a right to terminate at any time on five days' notice.

Paragraph 5 of the agreement provided for rates to be billed weekly in accordance with an attached Schedule. It went on to recite:

"The rates and charges set forth in the said Schedule are based upon the presently prevailing labor union contract wage scales and provisions, and upon the presently prevailing applicable common carrier tariff rates and charges filed with the Interstate Commerce Commission by the New England Motor Carrier Rate Bureau and the Middle Atlantic Conference. If there shall be any change or modification in such labor union contract wage scales or provisions, or in the above-mentioned common carrier filed tariff rates or charges, then and in that event, the rates and charges set forth in the Schedule attached hereto and made a part hereof shall be modified or adjusted accordingly."

Paragraph 6 obligated plaintiff carrier "at all times [to] comply with all applicable Federal, State and Municipal laws and the regulations of the respective regulatory bodies having jurisdiction over its activities."

In accordance with Section 218(a) of the Interstate Commerce Act (49 U.S.C. § 318(a)), which has now become the focus of the parties' dispute, plaintiff filed its initial schedule of contract rates with the Interstate Commerce Commission. Similarly, under Section 220(a) (49 U.S.C. § 320(a)), plaintiff filed the contract as a whole. In February of 1964, the parties amended their agreement to provide for increased rates. Plaintiff filed with the Commission, on April 9, 1964, the changed schedule of actual rates and charges.

Near the end of July 1964, the common carrier tariff rates and charges filed with the Commission by the New England Motor Carrier Rate Bureau and the Middle Atlantic Conference were increased 8½%. Plaintiff learned of this over a year later, whereupon its president spoke to one of defendant's officers on the subject of higher rates. The latter observed that defendant would view with disfavor any demand by plaintiff for an increase. Plaintiff made no change in its filings with the I.C.C. until September 19, 1965, when it filed a supplemental schedule of increased rates stated to be effective from September 22, 1965.

Plaintiff demanded that defendant pay the increased rates for the period from July 27, 1964—when the New England Bureau, but not plaintiff, filed a schedule of increases—to September 22, 1965, when plaintiff made its new filing. Defendant responded on October 15, 1965, by exercising its power to end the contract, giving plaintiff a notice of termination effective October 22, 1965. Plaintiff then brought this action, commenced on January 3, 1966, in the New York Supreme Court and since removed to this Court under our diversity jurisdiction.

The complaint pleads two causes of action:

(1) for $17,152.87, the claimed difference between the rates charged (and on file with the I.C.C.) for the period July 27, 1964, to September 22, 1965, and the filed rates in effect during that period for the New England Bureau; and

(2) for $2,800, based upon defendant's failure to give plaintiff goods to carry between October 15, 1965, the date of the termination notice, and October 22, 1965, the effective date of termination.

The motion before us is in form addressed to the complaint as a whole, but

subsidiary of Rexall Drug and Chemical Company. As a result of a subsequent merger, it has ceased to be a separate corporation, becoming, as the caption indicates, a division of Rexall. Nothing turns for our purposes on this change of corporate structure.

reaches in substance only the first cause of action. It was explicitly abandoned as to the second cause of action at the oral argument. We deal, then, only with the claim for higher rates from July 27, 1964, to September 22, 1965.

## II.

■ Defendant's answer to this claim is a simple, and correct, one. It is that Section 218(a) of the Interstate Commerce Act forbids plaintiff to "demand, charge, or collect compensation * * * different from the charges filed" with the I.C.C.

As it has read since August 13, 1957, this statute, 49 U.S.C. § 318(a), provides:

"It shall be the duty of every contract carrier by motor vehicle to establish and observe reasonable minimum rates and charges * * *. It shall be the duty of every contract carrier by motor vehicle to file with the Commission, publish, and keep open for public inspection, in the form and manner prescribed by the Commission, schedules containing the actual rates or charges of such carrier * * * *Provided,* That any contract carrier serving but one shipper having rendered continuous service to such shipper for not less than one year may file reasonable minimum rates and charges unless the Commission in any individual case, after hearing, finds it in the public interest to require the filing of actual rates and charges. No such contract carrier, unless otherwise provided by this chapter, shall engage in the transportation of passengers or property * * * unless the actual rates or charges for such transportation by said carrier have been published, filed, and posted in accordance with the provisions of this chapter. * * * No reduction shall be made in any such charge either directly or by means of any change in any rule, regulation, or practice affecting such charge or the value of the service thereunder, nor shall any new charge be established, except after thirty days'

notice of the proposed change or new charge filed in the aforesaid form and manner but the Commission may, in its discretion and for good cause shown, allow such change upon less notice, or modify the requirements of this subsection with respect to posting and filing of such schedules, either in particular instances, or by general order applicable to special or peculiar circumstances or conditions. Such notice shall plainly state the change proposed to be made and the time when such change will take effect. *No such carrier shall demand, charge, or collect compensation for such transportation different from the charges filed in accordance with this paragraph, as affected by any rule, regulation, or practice so filed, * * * and it shall be unlawful for any such carrier * * by any * * * device whatsoever, to charge, accept, or receive compensation different from the actual rates and charges so filed * * *.*" (Emphasis added.)

Language could scarcely be more plainly dispositive on its face. Plaintiff filed its actual charges and was paid them. The law forbids it to "demand, charge, or collect" any more. It is unlawful for plaintiff, "by any * * * device whatsoever," to "receive" compensation different from what it got under the filed schedule. That would seem to be—it ultimately is—a decisive answer to plaintiff's claim.

■■ Familiar precedents apply the long-standing rule to *common* carriers, which are entitled and required to recover only their actual rates, neither more nor less. E. g., Chesapeake & Ohio Ry. Co. v. Westinghouse Co., 270 U.S. 260, 46 S. Ct. 220, 70 L.Ed. 576 (1926); Louisville & Nashville R.R. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A. 1915E, 665 (1915). But the rule should be different, plaintiff says, for *contract* carriers, which do not pose the same problem of secret rebates or other discriminations that concerned Congress in its dealings with common carriers. The answer is that Congress could and did

impose a restriction, identical for our purposes, upon contract carriers. Moreover, when (in 1957) it put 49 U.S.C. § 318(a) in its present form, the Congress made clear a pertinent reason for doing so. The objective was to equalize competitive opportunities by requiring contract carriers after 1957 to make the same public disclosure of actual rates and charges that had for years been required of common carriers. See S.Rep. No. 335, 85th Cong., 1st Sess. (1957); H.R.Rep.No. 895, 85th Cong., 1st Sess. (1957).[2] The long familiar scheme of enforcement was likewise extended to contract carriers, outlawing attempts, like the one in this case, to recover charges higher than those duly filed and published.[3]

Plaintiff points out that its contract with defendant was on file with the Commission; that the contract recited that its rates were "based upon [1] the presently prevailing labor union contract wage scales and provisions, and [2] upon the presently prevailing applicable common carrier tariff rates * * * [of] the New England * * * Bureau"; and that its rates were to "be modified or adjusted accordingly" if there were changes in either the labor scales or the

Bureau rates. None of this helps plaintiff's case. The contract was filed in accordance with 49 U.S.C. § 320(a) and 49 C.F.R. § 187.4(f). The statute does not provide for, but normally forbids, publishing of contracts.[4] The prohibition against deviations from "charges filed in accordance with this paragraph" is not in 49 U.S.C. § 320(a), covering the filing of contracts, but in § 318(a), providing specifically for the filing and publishing of rate schedules.

In the more specific terms of this case, it should be patent that a contractual "escalation clause" geared to labor scales or some other set of rates could not substitute for the rate filing the statute requires. Plaintiff had a rate schedule on file and not withdrawn. The statutory end of disclosure would hardly be served by holding that an outside reader of the schedule should have been required to go to the contract (even assuming, contrary to 49 U.S.C. § 320(a), that it was available), see what the schedule was said to be "based upon", and know from this whether and how the actual rates, without a new filing, had been "modified or adjusted accordingly."

Plaintiff itself has demonstrated vividly the unsoundness of its view that the

---

2. In relying upon Betterman v. American Stores Co., 367 Pa. 193, 80 A.2d 66, cert. denied, 342 U.S. 827, 72 S.Ct. 49, 96 L. Ed. 625 (1951), plaintiff overlooks the vital changes in the statute wrought by the amendatory Act of August 13, 1957. As it read before then, 49 U.S.C. § 318(a) required contract motor carriers to file only their "minimum rates or charges" and, correspondingly, prohibited their demanding or collecting "a less compensation. * * * " The *Betterman* decision held merely that the statute then was no bar to the carrier's suit for contract compensation above the filed minimum. Having believed previously that common carriers were sufficiently served by protection against so-called "cut-throat competition" of contract carriers, thus requiring that the latter publish only minimum rates, Congress concluded in 1957 that fairness dictated disclosure to common carriers of "the actual rates charged by their contract carrier competitors." H.R. Rep. No. 895, supra, U.S.Code Cong. & Adm.News, 85th Cong., 1st Sess. 1406, 1407.

3. In one respect that merits a word Congress relaxed the new requirements: subject to the Commission's discretionary power to order the filing of actual rates in any particular case, it allowed a "contract carrier serving but one shipper" to file "reasonable minimum rates and charges." While plaintiff is such a carrier, it never took advantage of this provision. It filed only its *actual* rates.

4. In a proviso § 320(a) says "That if it appears from an examination of any such contract that it fails to conform to the published schedule of the contract carrier * * * as required by section 318 (a) of this title, the Commission may, in its discretion, make public such of the provisions of the contract as the Commission considers necessary to disclose such failure and the extent thereof." The Commission never found occasion to exercise this power with respect to the contract involved here.

filed contract could serve as a continually revised rate filing. For one thing, plaintiff actually filed an amended schedule shortly over a year after the original, and the parties were operating under the amendment during the period covered by plaintiff's claim. Plaintiff obviously knew that the charging of higher rates called for a new filing. More strikingly, the increased New England rates now claimed had been in effect for over a year before even the plaintiff learned of them and made its retroactive demand. It is inconsistent for plaintiff to say that the informative goal Congress sought through rate filings was served because the contract was on file.

We come finally to plaintiff's suggestion that it is somehow unjust or inequitable for defendant to take shelter behind the Interstate Commerce Act. It would be sufficient to say of this that the unqualified prohibition against charging rates different from those on file has been enforced through the years without swerving to do "justice in the relatively few instances where * * * literal enforcement works injustice * * *." Empire Box Corporation of Stroudsburg v. Delaware, L. & W. R. Co., 171 F.2d 389, 391, 6 A.L.R.2d 874 (2d Cir. 1948); see also Louisville & Nashville R. R. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494 (1915); Armour & Co. v. Atchison, Topeka & Santa Fe Ry. Co., 254 F.2d 719, 723–724 (7th Cir.), cert. denied, 358 U.S. 840, 79 S.Ct. 63, 3 L.Ed.2d 75 (1958). But the present case is not one, in any event, where the law's command should stir anyone's sense of injustice. Defendant had a right to end the contract on five days' notice. It exercised the right when plaintiff demanded (after filing in accordance with law) the higher rates. It could have done this had plaintiff made the demand (and the filing) earlier. There is no appeal in plaintiff's contention that the statute should be bent to allow its retroactive claim.

Defendant's motion is granted to the extent of dismissing plaintiff's first cause of action.

Settle order.